**HEMSELL et al. v. SUMMERS et al.**

**No. 5325.**

Court of Civil Appeals of Texas. Amarillo.

June 30, 1941.

306

J. W. Hassell, of Dallas, and Underwood, Johnson, Dooley & Wilson, of Amarillo, for appellants.

Sanders & Scott and Howard F. Saunders, all of Amarillo, and Moss & Young, of Tulsa, Okl., for appellees.

STOKES, Justice.

This is a common law action for damages filed by appellee, Florence O. Summers, surviving wife of J. W. Summers, deceased, on behalf of herself and Laura L. Summers, the surviving mother; James W. Summers, Patricia Summers and Geraldine Summers, minor children of J. W. Summers, deceased, against appellants, Clenon C. Hemsell and Columbian Fuel Corporation, in which appellee sought to recover damages alleged to have accrued to her and those for whom she sued on account of the death of her husband, J. W. Summers. She alleged that the death of her husband was occasioned by the negligence of appellant, Clenon C. Hemsell, and that Columbian Fuel Corporation was also liable for the alleged resulting damages on account of the fact that Hemsell was its employee and the death of her husband was occasioned by a collision between an automobile being operated by J. W. Summers and another automobile operated by Hemsell, who, she alleged, was engaged in the performance of duties devolving upon him as an employee of Columbian Fuel Corporation.

The record shows that on the 9th of October, 1937, at about 11 o'clock P. M., J.

W. Summers was driving his automobile from his home at Dumas to the place of his employment in the oil fields of Moore County. Hemsell was employed in the geological department of appellant, Columbian Fuel Corporation, in connection with oil producing properties owned by it in Texas, New Mexico and Kansas. He was returning from the company's property in Kansas where he had been engaged for a few days and, some three miles north of Dumas, on the public highway, the car being driven by him and the one being driven by J. W. Summers met and a collision ensued which resulted in the death of J. W. Summers.

The case was submitted to a jury upon special issues and resulted in a verdict and judgment in favor of appellee and the others on behalf of whom she sued for the total sum of $40,000, distributed among them in a manner not material to this appeal. The judgment was rendered October 3, 1940, and the next day appellants filed a motion for a new trial in which, among other things, they alleged misconduct of the jury in its deliberations upon the verdict. The motion was heard on the 11th of October and was taken under advisement by the trial judge who, on the 16th of October, 1940, overruled the same, to which action of the court appellants duly excepted, gave notice of appeal, and have brought the case to this court for review.

The briefs contain a large number of assignments of error and propositions of law but in the view we take of the case it will not be necessary to discuss them in detail. The controlling issue is presented by the third proposition of law submitted by appellants which pertains to a ruling of the court upon the hearing of the motion for a new trial. Appellants alleged misconduct of the jury during their discussions of the issues presented in the charge in that (1) the jurors discussed and considered the question of whether or not appellees would have to divide with their attorneys any amount which they may recover as damages, (2) the question of whether or not appellants carried liability insurance to cover claims such as that which constituted appellee's claim in this suit, (3) the amount assessed by the jury in a former trial of this case, and (4) the personal experience and observation of one of the jurors in an automobile accident containing features similar to some of those involved here, none of these being the subject of any of the testimony in the case.

Upon the hearing of the motion appellants presented two witnesses, members of the jury, in the persons of Raymond White and A. A. Stewart. White testified that at some time during the discussions something was said about attorneys' fees but that, if any one mentioned any percentage of the recovery that was usually paid to attorneys in such cases, he did not remember what the percentage was. He said that he considered the matter of attorneys' fees in arriving at the verdict. This witness did not remember any discussion of liability insurance, the amount of the verdict on the previous trial, nor the discussion of any question concerning the foreman's experience in an automobile accident. The witness Stewart testified very positively that the matter of attorneys' fees was discussed in the jury room and particularly the amount appellees would have to pay their attorneys. He said that several times the statement was made that the attorneys would get half of any amount recovered by appellee, and that he told the other jurors that, from what he had heard concerning such matters, he did not believe the attorneys would get more than a fourth of the amount recovered. He said most of the jurors claimed the attorneys would get half of such amount and that one or two of the jurors said it would probably be about a third.

This witness, Stewart, further testified that something was said during the deliberations about the amount assessed as damages by the jury upon the previous trial of the case but that no one seemed to know the exact amount; that some of the jurors said it was $29,000, some asserted it was $30,000, and others thought it was $31,000. He said that he was of the opinion it was $29,000, and that he believed he got the information from reading the newspapers at the time. He further testified that the foreman, Mr. McDaniels, said something about an experience which he once had in an automobile accident and that the witness argued with the foreman about it. He said he contended that, if Hemsell had been going much faster than Hemsell said he was, his car would have turned over; and that Mr. McDaniels replied that he himself once had a wreck similar to the one here involved; that he could not make a turn and his car jumped a borrow ditch and slid into the ground quite a distance, yet it did not turn over. This witness further testified that the question of liability insurance was discussed and that some of the jurors were of the opinion that the in-

surance probably was not greater than $10,-000 per person. He said that all of this discussion was in the jury room, in the presence and hearing of most or all of the jurors, and was engaged in by most of them before the jury agreed upon the amount which they found as constituting appellee's damages.

When the witness Stewart was excused appellants rested and appellee then introduced the testimony of three witnesses, members of the jury who had tried the case, consisting of Tom Record, R. L. Mc-Daniels, the foreman, and Lacy Meek. Tom Record testified that he heard no discussion in the jury room or at any other place concerning attorneys' fees, liability insurance, the verdict rendered by the jury upon the former trial, nor anything concerning the experience of the foreman of the jury in an automobile accident. He said he tried to hear everything that was said and believed that he could recall everything that was said during the conversations among the jurors while the case was being considered by them. The witness McDaniels denied categorically that he said anything during the entire deliberations concerning the matter of attorneys' fees; that he said nothing whatever about liability insurance and that he did not remember anyone discussing either of these subjects. He said furthermore that he did not discuss with any juror at any time an automobile accident which he once had that was in some respects similar to the experience of Hemsell in this case and denied that he made any assertion or statement to the jury, or any member of it, concerning the former verdict in this case. He said he did not know what the former verdict was and did not hear any member of the jury make any statement whatever concerning that matter. He testified upon cross-examination, however, that he did, at one time, have an experience with his automobile in Roberts County in which the steering gear seemed to lock and the wheels would not turn, but that he made no statement concerning the matter to any of the jurors as far as he could remember. The witness, Lacy Meek, was quite positive that he made no statement in the jury room concerning the matter of attorney's fees, liability insurance or the verdict of the jury on the former trial of this case, and that he did not hear Mr. McDaniels say anything about an accident with an automobile in which he was involved.

At the close of the testimony of the witness Meek appellee rested and appellants then called Marvin Williamson, another member of the jury. His testimony followed substantially the trend of the testimony adduced from appellants' first two witnesses, and when this became evident, appellee's counsel objected to further testimony of the witness upon the ground that it was improper as rebuttal testimony, contending that appellants should have introduced all of the testimony which they had to offer in support of their allegations in the motion for a new trial before they rested their case. The court sustained their objection, but permitted appellants to examine the witness and elicit the testimony for the purpose only of including it in their bill of exceptions. The witness then continued to testify for the purpose only of completing the bill of exception and said in substance that there was some discussion among the jurors about attorneys' fees and the amount the attorneys would receive. He said that he did not remember the exact words used by any of them but that some one suggested the attorneys would receive half of any amount which appellees might recover; that others suggested it would be a third, and still others were of the opinion it would be a fourth. He said this discussion was had during the time the amount of damages was being considered by the jury and before the verdict was finally reached. The witness further testified that some discussion was had concerning the verdict returned by the jury upon the former trial and that opinions varied from twenty to thirty thousand dollars. He said that at least three or four of the jurors engaged in the discussion. He further testified that there was a discussion in the jury room concerning an automobile accident in which Mr. McDaniels was involved.

There was no testimony upon the trial of the case concerning any of these matters, and testimony concerning any of them would not have been admissible for any purpose. As we have said, appellee objected to the testimony of the witness Williamson because it was in the nature of original testimony, designed to establish the allegations of appellants in their motion for a new trial concerning the misconduct of the jury and was not proper testimony to be introduced as rebuttal. The court sustained the objection and stated that his ruling would apply to any further

testimony of a like nature. In doing so he expressed the opinion that the court was entitled to have the matter developed more than it had been. He said: "We have only heard these witnesses, two put on by the defendants and three in rebuttal, and I may have been in error on my ruling here. I just don't know. I have had considerable concern about it. I wish I could have heard from all the jurors in this case and I feel like the court is at a particular disadvantage not to hear from all twelve of them. * * * In all fairness, to have reached a proper decision for all parties in this case, I should have heard from more jurymen in this case. That applies to both sides in this case. I am not being critical. You understand that. Twelve men were subpoenaed and only six were heard from. I will give it some thought and do what I think is proper in the matter."

The bill of exception shows that the court declined to consider the testimony of Williamson on the hearing of the motion for a new trial and it was stipulated by counsel in open court that all twelve of the jurors were present at the beginning of the hearing upon the motion and that after the testimony was completed all members of the jury were present except those who had testified.

■■ Appellants contend that the court committed reversible error in his ruling on this question and we think their assignments of error in reference thereto are well taken and must be sustained. It is true that article 2180 of the Revised Civil Statutes 1925 provides the order of proceedings on trials by jury and that its provisions apply to hearings upon motions such as this. We recognize furthermore the provisions of the article to the effect that, after the plaintiff or movant has introduced his evidence, the adverse party shall then introduce his evidence. Section 9 of the article provides that, after the hearing has proceeded to this point, the parties shall then be confined to rebutting testimony on each side. Appellee contends that the testimony of Williamson, offered by appellants, was not in the nature of rebutting testimony but was original testimony that should have been adduced by appellants as testimony in chief. According to the strict terms of the statute, this contention of appellee is correct. Williamson's testimony to the effect that the matter of attorneys' fees and the findings of the jury upon the former trial were discussed by some of the jurors in the case while the jury was deliberating upon the verdict was not evidence in rebuttal and should have been offered by appellants as a part of their evidence in chief. It is well established in this and most other jurisdictions in this country that the proper order in which evidence should be introduced is for the plaintiff, movant or relator first to introduce all of the evidence which he expects to adduce in support of the allegations of his petition or motion. This should be done before the defendant or respondent begins the introduction of his testimony. After the defendant, or respondent, has offered such testimony as he desires to offer in support of his defense, the plaintiff or moving party is permitted to introduce evidence of a rebutting nature only. The purpose of the rule is to observe orderly process in the presentation of the testimony and expedite the trial of cases. It is held, however, that the enforcement of the rule, although in this state and some others it is statutory in its nature, is largely within the discretion of the court and, while the court has a wide range in such matters, due regard must always be had for the substantial rights involved. The court should exercise his discretion in accordance with that which is just and right under the circumstances in which he is called upon to exercise it. Bass v. Receivers of Kirby Lbr. Co., Tex. Civ.App., 146 S.W. 658; Cameron Compress Co. v. Jacobs, Tex.Civ.App., 10 S.W. 2d 1040; Andrews v. Rice, Tex.Civ.App., 198 S.W. 666; Karnes County v. Carroll, Tex.Civ.App., 26 S.W.2d 394.

■■ The rule is one of procedure. It does not involve a substantive right and when the circumstances of any particular case are such that its strict enforcement will probably result in injustice to the party against whom it is invoked, it is considered an abuse of discretion of the court to deny him the benefit of material evidence solely upon the ground that it was not offered at the time provided by the rule of procedure. This is especially true when a relaxation of the rule is not likely to work an injustice or hardship upon the opposite party. As we have said, the record in this case shows that the six jurors who had not testified upon the motion for a new trial were present and their testimony could easily have been produced. The subject of the inquiry was one of very great importance. The record shows

there was a wide variance among the jurors at different times concerning the amount which they should find as damages, some of them voting for $5,000, others voting for as much as $50,000, and at least one juror at one time voted for an amount exceeding $100,000, while others specified amounts lying in between these amounts. If the matter of attorneys' fees was taken into consideration by the jurors in fixing the amount of the damages, a grievous error was committed. That is especially true in this case because, if the testimony of appellants' witnesses is true, they considered the attorneys' fees to be anywhere from 25% to 50% of the damages found by the jury to have accrued to the interested parties and thus erroneously increased the verdict by $10,000 to $20,000. It has always been held that discussions by the jury of such matters as attorneys' fees and liabilty insurance constitute misconduct of the grossest nature and, when it is established that such discussions were indulged, our courts universally say that the misconduct was of such a nature as to demand a reversal of the judgment. Texas & P. Ry. Co. v. Gillette, 125 Tex. 563, 83 S.W. 2d 307. Indeed, the learned trial judge expressed deep concern over the matter. He indicated strongly that he would have preferred to hear from all of the jurors and said that he felt he was under particular disadvantage in not having heard from all of them. It is evident, we think, the court was under the impression that he was bound by the strict letter of the rule we have discussed and it is likewise evident that a small amount of additional evidence might have influenced the mind of the trial judge one way or the other as to whether or not the misconduct actually occurred. One of the jurors testified that, in fixing the amount of the verdict, he had in mind the matter of attorneys' fees. He did not say the discussion in the jury room was what caused him to consider the matter of attorneys' fees, but, if that matter was actually discussed, we think it reasonable to assume that the discussion constituted the basis of his error in considering it. Judge Hickman, speaking for the Supreme Court in the Gillette case, supra, observed that if one juror probably agreed to the amount of the damages by reason of a private discussion of attorneys' fees, the verdict should not be permitted to stand even though the other jurors knew nothing of it and were not influenced by it. See, also, Southern Traction Co. v. Wilson, Tex.Com.App., 254 S.W. 1104; Moore v. Ivey, Tex.Com.App., 277 S.W. 106.

Of course, no trial court should permit a relaxation of this or any other rule not mandatory in its nature to the extent that the testimony may be prolonged, pro and con, indefinitely, nor allow any party to the suit arbitrarily, unduly or cunningly to take advantage of the wide discretion given the court to relax the strict provisions of rules of procedure. This, however, likewise comes within the sound discretion of the court and, where the ruling is based upon the obvious necessity of restraining the trial of cases within reasonable limitation of proper and orderly processes, or to circumvent an obvious disposition to abuse the munificence of the court, it could not be said that error was committed. There is no evidence in the record before us that appellants or their counsel had any ulterior motive in withholding some of the testimony for rebuttal and, as we have said, all of the jurors were accessible to the court. No injury, inconvenience or material delay could have resulted from a deviation from the strict provisions of the rule and we think, in view of the importance of the question before the court, all available testimony should have been heard. If the matter of attorneys' fees, liability insurance and the other items mentioned were taken into consideration by the jury in arriving at the amount of their verdict, the misconduct of the jury in that respect not only resulted in grave injustice but it was in direct violation of the plain and unequivocal instructions given to the jury by the court in his charge. While the court overruled the motion for a new trial, and we must indulge the presumption that he found against the allegations of appellants in respect to the misconduct, the testimony was of such conflicting nature as to require all available evidence to determine the closely contested issue of whether or not the misconduct occurred. The witness, Raymond White, boldly stated that in arriving at the amount, he took into consideration the matter of attorneys' fees, a thing he was specifically instructed by the court not to do. While the secret processes of the minds of jurors are not subject to review, it is difficult, if not impossible, to say, from the evidence, that the misconduct of this juror was not induced by something which happened during the discussions in the jury room. In our opinion the court erred in declining to hear

the testimony of the witness Williamson and indicating to counsel that the ruling applied to any other similar testimony which they may wish to offer and for this error the judgment will have to be reversed.

Appellant Hemsell, while testifying in the case, said that the headlights on Summers' car were very bright and glaring; that there was no center stripe in the road and in approaching the scene of the accident it was necessary for him to watch closely the outer edge of the pavement on his right-hand side. He said he did this to the best of his ability and that he remained on the right-hand side of the pavement. Witnesses for appellee who were in the car with Summers testified that immediately preceding the collision of the two cars Hemsell swerved his car to the left and crossed over the center of the highway, which resulted in the collision, and that Summers swerved his car to the right in an effort to avoid the impact. While Hemsell was very positive that he did not cross the center of the highway, but remained on the right-hand side, he said that, if by any means he was mistaken and that, as a matter of fact, he did cross the center of the highway as testified to by appellee's witnesses, it was due to the glaring lights on Summers' car which blinded him so that he was unconscious of it and that it happened in spite of his best efforts to remain upon the right-hand side of the road. Appellants contended that this testimony raised the question of sole proximate cause and they requested the court to submit to the jury their special issue No. 16 requiring a finding as to whether or not the glare of the headlights faced by Hemsell, in connection with the absence of a center stripe in the highway, did not constitute the sole proximate cause of the collision and Summers' death. The requested special issue was refused by the court and in our opinion this constituted error. Obviously, if the headlights on Summers' car were bright and of such a nature as to destroy Hemsell's vision, although he testified very positively he remained on the right-hand side of the road, if he was honestly mistaken and his crossing the center of the highway was without negligence on his part but due solely to the fact that he was blinded by the bright lights, and the collision resulted from the fact that he thus swerved to the left side of the road, it could have been the sole cause of the accident. Appellee's witnesses were very positive that the collision happened on the left side of the road and the testimony is conclusive that if Hemsell had remained on the right-hand side of the road the collision would not have occurred. We do not agree with appellee that this matter was covered in other special issues, pertaining to the manner in which Summers handled his car immediately before the collision; but are of the opinion that the special issue requested by appellants, or some similar one, should have been submitted upon the question of sole proximate cause.

Because of the errors which we have discussed, the judgment of the court below will be reversed and the cause remanded.