### PLUNKETT et al. v. SIMMONS et al.
#### No. 1392.

Court of Civil Appeals of Texas. Waco.
June 29, 1933.

Rehearing Denied Oct. 5, 1933.

---

314

J. R. Ogle and Smoot & Smoot, all of Wichita Falls and Horton B. Porter, of Hillsboro, for appellants.

Frazier & Averitte and Morrow & Clarke, all of Hillsboro, Geo. T. Burgess, of Dallas, and Tarlton Morrow, of Wichita Falls, for appellees.

ALEXANDER, Justice.

This action was brought in the county court of Hill county to contest the will of Henry. Plunkett, deceased. The suit was originally brought by John Lee Plunkett and others, who claimed to be cousins of the deceased. Later Mary Jane Connors and Nellie Mosby, alleged sisters of the deceased, and Edward H. Francis and William J. Francis, alleged nephews of the deceased, intervened. After trial in the county court the cause was appealed to the district court. Upon a trial in that court the verdict of the jury and judgment of the court were for the defendants. The interveners alone appealed.

It appears without dispute that the deceased, Henry Plunkett, settled on a farm near Penelope, in Hill county, Tex., about the year 1883. He was unable to read or write, and but little is known of his life prior to that date, except that he had been engaged as a laborer in the construction of railroads in various places in the state prior to settling in Hill county. After settling in said community he continued to reside therein and to engage in the farming industry until the year 1930, when he died at the age of 77 years, without leaving a wife or any descendants surviving him. During his residence in Hill county he accumulated a large estate. Shortly prior to his death he executed the will in question, in which it was recited that he had been left an orphan at an early age and had no near relatives, and by which will he bequeathed the larger part of his estate to orphan homes, churches, and other charitable institutions. The plaintiffs, who resided in the state of California, and interveners, some of whom resided in Michigan and the others in the state of Illinois, sought to set the will aside on account of lack of testamentary capacity on the part of the testator. The plaintiffs and interveners did not claim to be related to each other nor seek to establish their relation to the deceased through a common ancestor. In other words, each set of litigants sought to establish its relation to the deceased to the exclusion of the other. The plaintiffs claimed to be cousins of the de-

ceased. They did not claim to have ever seen him or to have had any communication with him, but sought to establish by circumstances that the deceased was the son of their deceased father's brother. The interveners claimed to be sisters of the deceased or their descendants. They asserted that their brother, as the result of an altercation with their father, left the family home in North Dakota when he was a young man and never returned. They sought to establish that the deceased was the same person as their lost brother. The defendants, by a plea in limine and by special answer, denied that either the plaintiffs or interveners were related to the deceased, and, in consequence thereof, challenged their right to maintain the suit under the provisions of Revised Statutes, article 5534. The court elected to first try out the issue as to relationship, and the jury, in answer to special issues, found that neither the plaintiffs or interveners were related to the deceased. It is apparent, therefore, that the material issue before the trial court was whether or not the interveners, appellants in this court, were related to the deceased. Most of the assignments of error here presented relate to the admission or rejection of evidence on this issue.

■ At the conclusion of the evidence by the plaintiffs, the court required the interveners to introduce their evidence prior to the introduction of the evidence by the defendants. The appellants, who were interveners below, assert that such procedure was in violation of the terms of Revised Statutes, article 2180. There is no formal bill of exception in the transcript raising this question. The appellants rely on an exception taken at the time and embodied in the statement of facts. Revised Statutes, article 2239, as amended (Vernon's Ann. Civ. St. art. 2239), which provides for the embodiment of bills of exceptions in the statement of facts apparently applies only to the rulings of the court in admitting or excluding evidence, and not to matters such as are here complained of. However, if we assume that an exception is properly shown, we do not think that the ruling presents reversible error. Revised Statutes, article 2180, provides, in substance, that the party having the burden of proof on the whole case shall present his evidence first. The adverse party shall then introduce his evidence, and the intervener may then proceed to introduce his testimony. The court, however, for good cause to be stated in the record, may otherwise direct the order of procedure. The burden of proof on the whole case in this instance was as much on the interveners as it was on the plaintiff. Certainly, as between the interveners and the defendants, the burden of proof was on the interveners. Most of the testimony which the defendants offered in reply to that offered by the plaintiffs was likewise in reply to, and in rebuttal of, that offered by the interveners. The court followed the logical order in requiring the interveners to introduce their evidence before calling upon the defendants to introduce their evidence. The time of the court was conserved and the issues were presented to the jury with greater clearness by following the course adopted by the court. Under the circumstances, we think it was largely discretionary with the court as to what order should be adopted in the introduction of the testimony. The appellants do not appear to have been injured by this procedure. It is true that the court did not enter of record a notation of any reason for requiring the interveners to introduce their evidence prior to that of the defendants, but in view of the fact that the burden of proof on the whole case was as much on the interveners as it was on the defendants, we are of the opinion that the trial court did not abuse its discretion by adopting such order of procedure. Folts v. Ferguson (Tex. Civ. App.) 24 S. W. 657.

■ There was evidence that the deceased, Henry Plunkett, had several moles on various parts of his body. The trial court refused to allow Mrs. Mosby, one of the appellants who claimed to be a sister of the deceased, to testify that her deceased mother had often told her that her lost brother had moles on the front part of his chest and on his back similarly located to those proven to be on the body of the deceased. What the mother told the witness was hearsay and inadmissible. It did not constitute proof of pedigree, 17 Tex. Jur. 600; 22 C. J. 239, and therefore did not come within the well-known exception to the hearsay rule which applies in such cases. Moreover, it is generally known that moles on the human body are so common that the evidence, if admitted, would have been of but little value. The court permitted Mrs. Connors, a sister of the witness, to testify to similar statements by the deceased's mother and permitted both Mrs. Mosby and Mrs. Connors to testify that moles were family characteristics in their family. Even if the excluded evidence was admissible, we do not think its exclusion was such error as would require a reversal of the case.

■ The court refused to allow Mrs. Connors, one of the appellants who testified by deposition, to testify as to the contents of certain letters which she claimed to have received from her brother, Henry Plunkett, about twenty years prior to his death. It was claimed that the original letters were lost. Mrs. Connors was a party to the suit and was seeking to establish herself as an heir to the estate. Her testimony related to a purported transaction with the deceased, and was not admissible under the provisions of Revised Statutes, article 3716. Moreover, Mrs. Connors' deposition has been forwarded

to this court for examination, and we are unable to find anything therein which established that the letters, the contents of which Mrs. Connors proposed to reveal, were written by the deceased or under his authority. She testified, in substance, that about the year 1911 she advertised for her lost brother and received a letter from a boy "in Texas" advising that a neighbor fit the description of her lost brother. She wrote the man in question and received a letter, or letters, in reply thereto signed by Henry Plunkett. There is nothing in the deposition to show what part of Texas the letters were from, nor to otherwise connect them up with the deceased. The court did not err in excluding this testimony.

■ The appellants offered to prove by the deposition of Mrs. Allen, a daughter of Mrs. Connors, that her mother received a letter from the witness' "Uncle Henry" in Texas, which letter had been lost, and also offered to prove the contents of such letters. We have examined the deposition of this witness and there is nothing therein to prove whom the letters in question were from, except that the witness states that they were from "my Uncle Henry." There is nothing to show where the letters were from, except that they were "from Texas." The appellants did not sufficiently connect these letters with the deceased to make her testimony admissible.

■ The court refused to allow a witness, Miss Wells, who was a niece of the deceased's wife, to testify that on one occasion while she was visiting in the Plunkett home, Mrs. Plunkett, now deceased, exhibited to the witness a package of letters and said that some of them were from Mr. Plunkett's sister, Mary Jane, and that she, Mrs. Plunkett, had written some letters for Mr. Plunkett to his sister in reply thereto. What Mrs. Plunkett told the witness as to whom the letters were from, and about having written some letters for Mr. Plunkett to his sister in reply thereto, was hearsay. Moreover, this same witness was later permitted to give substantially the same testimony, and the package of letters referred to were admitted in evidence and read to the jury. There was no error in the ruling of the court.

■■ There was in the record an identified photograph of the deceased, Henry Plunkett. Mrs. Mosby, one of the appellants who claimed to be a sister of the deceased, was denied the right to testify "that the (identified) picture is like my father would look only for the mustache, father did not wear mustache." Ordinarily it is permissible for a nonexpert witness to give his conclusions only when it is made to appear that the situation and circumstances involved cannot at the time of the trial be recited with sufficient accuracy and detail as to put the jurors in as good position to form an opinion as the witness. Exporters' & Traders' Compress &

Warehouse Co. v. Shaw (Tex. Civ. App.) 20 S.W.(2d) 248, par. 10, and cases there cited. It is entirely probable that the witness could not describe her father with such detail as to convey to the jury an exact picture of his likeness. It is also true that the fact that the deceased, as shown in the picture, resembled the witness' father, was a circumstance that might have been of some value to the jury in determining whether the deceased was in fact witness' brother. However, this was only a remote circumstance, and its exclusion is hardly sufficient to justify a reversal of this case. It appears that the trial court allowed both parties a rather wide latitude in developing the testimony. The transcript in this case includes approximately 600 pages, and the statement of facts comprises approximately 1,500 pages. The witness in question was allowed to describe both her father and brother in detail. Mrs. Connors, another one of the appellants, and Mrs. Orderman, a witness in behalf of the appellants, were permitted to testify that the man in the identified picture resembled the father of Mrs. Mosby and Mrs. Connors, and Mrs. Connors further testified that the man in the picture resembled the lost brother. When we consider the mass of testimony introduced on the issue as to whether the deceased was or was not a brother to the appellants, the excluded testimony becomes, relatively, of small importance. The error, if any, in excluding this testimony was of such little consequence considering the case as a whole that we are not inclined to reverse the case therefor. Rule 62a; Burrell Engineering & Const. Co. v. Grisier, 111 Tex. 477, 240 S. W. 899, par. 9; Humble Oil & Refining Co. v. McLean (Tex. Civ. App.) 268 S. W. 179, 180, par. 15; Missouri Pac. R. Co. v. Guillory (Tex. Civ. App.) 28 S.W.(2d) 282, par. 1; Barr v. White (Tex. Civ. App.) 47 S.W.(2d) 910, par. 5; International-Great Northern R. Co. v. Motley (Tex. Civ. App.) 18 S.W.(2d) 782, par. 5.

■ Judge G. D. Tarlton drew the will in question. The will provided that the executor should consult Judge Tarlton in administering the estate, and in the event the will should be contested he should be employed as counsel to uphold the will. Judge Tarlton was, to that extent, an interested party and was made a party defendant in these proceedings. The plaintiffs introduced in evidence the deposition of Judge Tarlton in which he testified to certain statements made to him by the deceased as to his family history and past life.

(a) The appellants objected to said deposition because the witness was a party to the suit and his testimony related to a transaction with the deceased and was therefore inadmissible under the provisions of Revised Statutes, article 3716, known as the "dead man's statute." Judge Tarlton was a party defendant. His deposition was taken and in-

troduced in evidence by the plaintiff. The witness was therefore "called to testify by the opposite party" within the meaning of Revised Statutes, article 3716, and his evidence was clearly admissible in behalf of the plaintiff and against the defendant. The interveners, appellants herein, merely objected to the testimony and did not ask the court to limit its effect to the issues between defendants and plaintiffs only. The general rule is that where evidence is admissible against one party but not against another, it is not sufficient for the party against whom the evidence is inadmissible to merely object thereto, but he must go further and ask the court to limit the testimony to the issues between the other parties. No such request was made by the intervenors in this case. The court did not commit reversible error in overruling the objections as made by the interveners. Keowne v. Love, 65 Tex. 152, 158; Edwards v. White (Tex. Civ. App.) 120 S. W. 914, par. 6; Olschewske v. Priester (Tex. Com. App.) 276 S. W. 647, par. 1; Johnson v. Frost (Tex. Civ. App.) 229 S. W. 558, par. 2; Brite v. Atascosa County (Tex. Civ. App.) 247 S. W. 878, par. 9; Hartt v. Yturria Cattle Co. (Tex. Civ. App.) 210 S. W. 612, par. 3; Sullivan v. Fant (Tex. Civ. App.) 160 S. W. 612, par. 20; Evans v. Scott (Tex. Civ. App.) 97 S. W. 116.

■ (b) The appellants objected to said deposition because same was taken before they intervened in the case and they were therefore denied the privilege of filing cross-interrogatories. It appears, however, that before the trial was begun the appellants agreed that all depositions theretofore taken should be used in evidence. They thereby waived the right to object to the deposition on the ground that it had been taken prior to their intervention herein.

■ (c) Appellants contend that even though said witness was properly permitted to testify to statements made by the deceased as to his age, place of birth, the names of his parents, and other matters pertaining to his family history, the witness should not have been permitted to give in evidence statements made by the deceased that he had been left an orphan and had been placed in an orphans' home when he was a small boy. We think the statements by the deceased relating to his personal history were admissible on the question of identity. Wigmore on Evidence (2d Ed.) §§ 1494 and 1791. Furthermore, the deceased made practically the same statement in his will, which was admitted in evidence; said statement being as follows: "In bequeathing the bulk of my separate and community estate to homes for orphans boys, I am influenced by the fact that I was left an orphan at an early age and penniless and I thus keenly realize the needs of orphans left in similar circumstances. Having no chil-

dren or near relatives, I feel free to dispose of the property with which God has blessed me, as my sympathy for destitute orphans and a sense of duty dictates."

Numerous assignments of error are presented complaining of the argument to the jury by counsel for plaintiffs and by counsel for defendants. We have examined each of these assignments and have concluded that the argument was justified by the evidence, and that the bills of exception as qualified by the court present no error. We have considered all other assignments and find same without merit.

The judgment of the trial court is affirmed.