Joanne NIX, Appellant,

v.

H.R. MANAGEMENT COMPANY, et al, Appellees.

No. 04–84–00562–CV.

Court of Appeals of Texas,
San Antonio.

May 27, 1987.

Rehearing Denied July 8, 1987.

Stephen F. White, San Antonio, Jack H. Robison, New Braunfels, Peter J. Stanton, Boerne, for appellant.

Thomas E. Quirk, Thomas Walch, David Stewart, San Antonio, for appellees.

Before CADENA, C.J., and CANTU and REEVES, JJ.

## OPINION

REEVES, Justice.

Joanne Nix sued H.R. Management Company and La Plaza, Ltd. Apartments for injuries she suffered as a result of two alleged rapes committed against her while she was a tenant at the La Plaza Apartments. The jury found that the first rape was not caused by any negligence on the appellees' part and that the second rape did not occur. Based on these findings, the court entered a take nothing judgment.

H.R. Management manages the La Plaza Apartments. During the first week of September 1977, Nix leased an apartment in the complex. In the early morning of September 27, she was raped by an intruder who entered through a living room window. The evidence indicated that the rapist forced the living room window locks open to gain entry. Immediately after the rape, Nix notified the police, was taken to a hospital, treated and released.

She also notified La Plaza's management, which thereafter placed metal bars inside the tracks of the bedroom and living room windows. However, no bars were placed on the smaller and less accessible bathroom and kitchen windows. On October 6, Nix allegedly was raped again by the same intruder. She testified that immediately after the rape she inspected the apartment to see how the rapist entered and found the screen to the kitchen window removed, the window open, and the window curtains on the kitchen floor. She again notified the authorities, was taken to a hospital, treated and released. She moved out of the La Plaza Apartments that day and later filed suit against its owners and management.

Nix complains that the trial court erred in allowing an undisclosed expert for the appellees to testify. We agree. At trial the defense called an expert in accident investigation and reconstruction to rebut testimony by Nix's expert that the locks on the apartment windows could be forced open by wedging a thin piece of metal between the frames of the inner and outer window. Nix's attorney objected to the witness testifying because he was not listed as an expert in discovery.

Failure to supplement the list of testifying experts is governed by TEX.R.CIV.P. 215(5). In a recent treatment of that rule, the Supreme Court noted that failure to supplement results in the loss of the opportunity to offer the witness' testimony. *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 298 (Tex.1986). The sanction is automatic and the only exception is when good cause is shown why the testimony should be allowed. *Id.* Determination of good cause is within the sound discretion of the trial court and can only be set aside if that discretion was abused. *Id.*

To determine if there is an abuse of discretion, we must look to see if the court acted without reference to any guiding rules and principles. *Morrow*, 714 S.W.2d at 298. One of those principles is that it is incumbent upon the party offering the testimony to show good cause why it should be admitted. In this case, H.R. Management did not show good cause.

H.R. Management argued good cause existed because Nix's expert's testimony that the apartment window locks could be forced open by inserting a thin piece of metal between the window frames was a new theory not alleged in Nix's pleadings or brought out during discovery. If this were true, the failure was with H.R. Management and not with Nix. During the deposition of Nix's expert, the following transpired:

Q: In other words, even with both of those [windows] closed the thing could be opened.

A: If the window locks did not catch in a proper manner, yes.

Q: Well, if they were in a full-closed position?

A: Well, if they were in a full-closed position, they might hold the window shut but there are other means of opening the window....

A: My opinion on the window locks that were on the rear windows and also on the kitchen window was that especially on the rear windows, that due to them not locking properly, it would have been very easy to gain access through the kitchen window. Again being in the condition it was when I saw it and the style of window lock that was placed on it, it would still be fairly simple to enter the window.

These portions of the deposition were brought out during trial. Nix's attorney argued that the excerpts show that at least at two points during the deposition, Nix's expert testified the windows could be opened even with the locks fully engaged. Nix's attorney argued that the expert's deposition testimony raised the issue of alternate means of entering and that H.R. Management's attorney failed to pursue that line of questioning. Thus, if the "metal wedge" theory was not brought out earlier, it was not because Nix was lying behind the log, but rather because H.R. Management failed to pursue the matter when it was raised. Furthermore, H.R. Management did not object to the "metal wedge" testimony at trial. Nix's expert freely testified about the metal wedge without objection. Thus, we find the trial court erred in allowing appellees' witness to testify.

Nix next complains that the appellees should not have been allowed to impeach her on a collateral matter. During her case in chief, Nix was asked the following by her attorney:

Q. Joanne, when you testified on deposition earlier this month of August, 1984, that there was such a conversation, and

when you testified here yesterday that there was such a conversation, and that when you testified today again that that conversation occurred, where you asked Joyce Morris if it would be possible to move out of there [the apartment], were you meaning to mislead or lie to this jury when you said that?

A. No, sir....

Q. And when you responded on deposition that you didn't remember his name [Dr. Montgomery, one of Nix's psychiatrists], were you lying to Mr. Quirk at that time?

A. No, sir, I was not lying....

A few days later, Nix was called by the appellees as an adverse witness and the following exchange occurred between her and the appellees' attorney:

Q. Okay. Now, Friday your lawyer asked you if you were trying to mislead the jury and you said no; correct?

A. That is correct.

Q. He also asked if you were being truthful when you answered the questions and you said that you were being truthful?

A. Yes....

Q. And as I said, you said to the jury that you were always a truthful person; correct?

A. I always felt that I have been a truthful person, yes.

Q. Have you ever said anything on a previous occasion that is inconsistent with the statement that you are always a truthful person?

At that point, Nix's attorney objected on the ground that Mr. Quirk, the appellees' attorney, was about to go into a collateral matter. The judge overruled the objection, Mr. Quirk continued and elicited the following:

Q. Okay. Perhaps I can refresh your memory. Did you, in connection with another contract, and this is a contract here, in connection with another contract, did you tell, in 1978, tell Bill Quirk that you lied in connection with an electrician's contract?

MR. WHITE [Nix's attorney]: We object again. This is impeachment of a collateral matter.

THE COURT: Overruled.

THE WITNESS: That is correct, sir. . . .

In answer to Nix's complaint, the appellees argue that they had a right to go into the collateral matter since Nix opened the door by her testimony about being a truthful person. In view of TEX.R.EVID. 404(b) we cannot agree with appellees' argument.

■ TEX.R.EVID. 404(b) prohibits a party from injecting evidence of other wrongs or acts into the trial in order to show that the witness acted in conformity therewith. Such wrongs or acts are admissible only for purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The appellees' attorney raised a collateral matter to prove the character of Nix in order to show that she acted in conformity therewith. From the way it is couched, his question implies that perhaps Nix lied about the second rape in order to get out of her lease contract. The appellees did not offer the evidence as proof of motive, opportunity, et cetera. Consequently, under rule 404(b) of the Texas Rules of Evidence, it was not admissible. *See also* TEX.R.EVID. 608(b).

■ Nor do we agree with the appellees' argument that Nix's testimony that she was not lying to the jury about her conversation with Joyce Morris or remembering Dr. Montgomery's name somehow opened the door to the use of the collateral matter. The appellees' attorney's paraphrase about what Nix had testified days earlier was incorrect. She did not state she was always a truthful person. Rather, she testified that she was telling the truth about a specific conversation with Joyce Morris and about not remembering Dr. Montgomery's name in an earlier deposition. This hardly opens the door for the appellees' attorney to ask Nix if she had ever told a lie sometime during her life. This point of error is sustained.

■ Having found that the trial court committed error in allowing appellees' expert to testify and in allowing Nix to be impeached on a collateral matter, we must now determine whether the errors require reversal. To do this, we must determine whether the errors complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case. TEX.R. APP.P. 81(b)(1); *First Employees Insurance Co. v. Skinner*, 646 S.W.2d 170, 172 (Tex.1983). This is a judgment call entrusted to the sound discretion and good sense of the reviewing court from an evaluation of the whole case. *Lorusso v. Members Mutual Insurance Co.*, 603 S.W.2d 818, 821 (Tex.1980). Interpreting rule 81's Supreme Court equivalent (formerly TEX.R. CIV.P. 503, now TEX.R.APP.P. 184(b)), the Supreme Court said the burden of the complaining party to establish reversible error would be met by showing the trial was materially unfair. *Lorusso*, 603 S.W.2d at 820.

The Supreme Court recognized the impossibility of prescribing a specific test for determining whether any error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Lorusso*, 603 S.W.2d at 821. With that in mind, the Court has given, on at least two occasions, an example which we think useful in the instant case. The Supreme Court has stated that in a case in which the complaining party failed to prove his cause of action or defense, an error could not be said to have resulted in a materially unfair trial. On the other hand, when the trial is contested and the evidence is sharply conflicting, the error results in a materially unfair trial without showing more. *Lorusso*, 603 S.W.2d at 821; *Patterson Dental Co. v. Dunn*, 592 S.W.2d 914, 921 (Tex.1979). While in those cases the Court was speaking of juror strikes, the Court made clear in *Lorusso* that it was speaking of all errors of law by the trial court. *Lorusso*, 603 S.W.2d at 821.

This case was hotly contested and the evidence sharply conflicting. Nix alleged that to commit the second rape, the intruder gained entry through the kitchen window. Whether that window had been

forced open became a critical issue. There was evidence that the window had been forced open and evidence that it had not.

Supporting the forced break-in theory was Nix's own testimony that the screen was torn and removed, the window open and the curtains on the ground. Additionally, Nix's expert testified that when he examined the window in 1984, there were signs that the locks had been tampered with. However, because of corrosion, he could not say when the tampering occurred.

William Murphy, the apartment maintenance manager, testified that he checked the apartment while the police were still on the scene after the second rape. He saw the kitchen curtain on the floor but stated he seemed to remember the kitchen windows in a locked position. Anton Michalec, an officer investigating the second rape, testified that when he arrived, the kitchen window screen was off, the window open, and the curtains were on the floor. He stated that he inspected the kitchen window and saw no signs of forced entry. He also testified that, while he could not be certain, he believed that if the locks were forced with a thin metal wedge, there would be no scratch marks on the locks.

Joyce Morris, the apartment manager, testified that sometime after the second rape, she inspected the kitchen window locks and they were not broken. She said she did not see any pry marks around the window. Later in the trial, she also testified that she tried forcing the kitchen window locks with metal wedges of various thicknesses and could not.

Nix had the burden to prove the second rape. In response to the special issues inquiring into that fact, the jury found she had not been raped. While Nix testified that she had a glass of wine and three valiums six hours before the alleged second rape, and while one of Nix's psychologists testified that some rape victims fantasize a second rape, that same psychologist also opined that Nix was telling the truth about the second rape. The only person who testified as to the second rape was Nix. The jury must have concluded that she

either lied about or fantasized the second rape. In light of the record as a whole, the improper evidence of Nix's lying in connection with a contract she executed in Florida in past years was extremely damaging to her veracity.

The only physical evidence of the alleged rapist's entry for the second rape was the open kitchen window. While the maintenance manager testified that when he arrived on the scene, the window was locked, he also stated the window curtains were on the floor and that the police were already there and working on the window. He admitted the police may have closed and locked the window. Nix testified that immediately after the second rape, she inspected the apartment and found the kitchen window open. Officer Michalec, one of the officers on the scene, testified that the window was open when he arrived. Based upon this evidence, the jury must have concluded that Nix either intentionally removed the screen, opened the window and placed the curtains on the floor or did so while under a fanciful state of mind.

Based on the guidance we glean from the *Lorusso* and *Patterson* decisions, we find the errors of the trial court in allowing appellees' expert witness to testify and in allowing Nix to be impeached on a collateral matter resulted in a materially unfair trial. We are constrained to point out that while we address the two errors before reversing, each error standing alone is sufficient to warrant reversal.

We reverse the judgment and remand the case for new trial on the merits.