Mr. Martin and Mrs. Gloria
PREZELSKI, Appellants,

v.

Mr. Robert L. CHRISTIANSEN,
D.D.S., Appellee.

No. 04–88–00089–CV.

Court of Appeals of Texas,
San Antonio.

July 26, 1989.

Rehearing Denied Sept. 13, 1989.

Arnold Anderson Vickery, Elizabeth Kilbride, Houston, for appellants.

Thomas H. Crofts, Jr., Jo Reser, Groce, Locke & Hebdon, San Antonio, for appellee.

Before REEVES, CHAPA and PEEPLES, JJ.

## OPINION

CHAPA, Justice.

Appellants Gloria and Martin Prezelski sued appellee, Doctor Robert L. Christiansen, alleging medical malpractice in relation to services rendered which culminated in oral maxiofacial surgery performed upon appellant, Gloria Prezelski. Appellants appeal from a judgment rendered in favor of appellee as a result of a jury verdict.

The dispositive issue is whether the actions of the trial judge require reversal under TEX.R.APP.P. 81(b)(1) because appellants were denied the right to fairly present their case. TEX.R.APP.P. 90(a). We reverse.

During the trial, appellee presented two medical experts on his behalf, Dr. Carl Schow of Galveston, Texas and Dr. Daniel Verne of Cleveland, Ohio. However, before terminating the examination of appellee, appellee's counsel moved for permission to present appellee's medical experts out of order. Although appellants agreed to the arrangement, they requested 30 minutes to cross-examine appellee prior to the out of order testimony. The court denied the request and over appellant's objection,[1] permitted appellee's medical experts to be presented out of order and to be excused.[2]

The record clearly reveals that all the medical experts agreed that cephalometric x-rays were critical to properly perform the

---

1. The dissent would deny any relief to appellant because appellant did not make "an adequate and specific objection" and the court was "obviously" enforcing some agreement of the parties. In so doing, the dissent ignores Tex.R.Civ.P. 11, requiring such agreements be in writing, which is not the case here. Without support from the record or transcript, the dissent engages in improper presumptions concluding that the so called verbal "agreement" was witnessed and endorsed by the court. The obvious disagreement as to what the "agreement" was is vivid in this record, and we find nothing from the court to indicate it had any personal knowledge as to what the agreement was. The need for Rule 11 is ironically illustrated here, where one party's recollection of the agreement was different from the other.

Further, the dissent ignores the clear language of the record:

MS. RESER: Your Honor I had told plaintiff's counsel I was bringing Dan Verne Monday morning and it was my understanding I would be able to take him out of turn. And would I like to proceed with him at this time.

MR. VICKERY: I have no objection to bringing Dr. Verne out of turn in the case. I told her the other day *I do object to her doing it prior to finishing up with Dr. Christiansen.* The reason isn't to be horsey. *The reason is there is some things that I need to clear up based on the position that he has taken in court in order to properly examine Dr. Verne.* And she had said before lunch she had 2 hours with him and she went the rest of the full afternoon. So she can't possibly have much more with Dr. Christiansen. *But I need to come back and clear up some things in my own mind in order to—*

THE COURT: How long is your redirect with him?

MR. VICKERY: *30 minutes.* (emphasis added)

After the parties argued further, each asserting their version of the agreement, the court allowed Dr. Verne to testify out of order without allowing the appellant to cross-examine appellee for 30 minutes prior to Dr. Verne's testimony. Appellant's objection and the reason for it was sufficient to preserve error.

2. The dissent suggests that the trial court purportedly had unbridled discretion to permit witnesses out of order under the authority of TEX. R.CIV.EVID. 611(a). However, the dissent ignores that the rule merely authorizes a *reasonable* control of the trial judge over the mode and order of interrogating witnesses. We think it an *unreasonable* control when the result prevents a party from exercising their right to present their case fairly. This case illustrates why a trial court must be very cautious before permitting experts, whose testimony is so dependent on the testimony of a party, to testify out of order prior to terminating the testimony of the party upon whose testimony their testimonies depend. This is especially true in face of an objection and request to be permitted "to clear up" something with the adverse party "to properly examine" the adverse party's experts, as we find here. The trial judge here could not have known the appellee was going to change his testimony later, but the 30–minute cross examination of appellee requested by appellants prior to the out of order testimony of appellee's experts was a reasonable request which should have been granted.

The dissent is also troubled that the majority opinion might have an adverse effect on future discretionary decisions of trial judges. Certainly, one of the purposes of appellate opinions is to be instructive, especially to trial judges. Nevertheless, we perceive the issue before us as being more paramount; that is, whether, under these circumstances, the appellant received a fair trial.

surgery here involved. Appellee contended during his deposition and initial testimony at trial that he had taken cephalometric x-rays and that they were somehow lost. Appellee's medical experts, who testified out of order, were also under the impression that the cephalometric x-rays had been correctly taken and viewed by appellee before the surgery. Appellee's experts however, were prevented from examining the cephalometric x-rays because they were supposedly lost according to appellee's original testimony. Therefore, since appellee's experts considered the cephalometric x-rays critical, believed that appellee had indeed taken them, and were prevented from examining them, we can safely assume that they must have engaged in some presumptions favorable to appellee in order to conclude the subsequent surgery performed on Gloria Prezelski was proper.

 Thereafter, after appellee's medical experts had testified and had been excused, appellee changed his testimony and for the first time admitted he had indeed not taken cephalometric x-rays of the appellant at all. Thus, appellants insist they were deprived of their right to inquire of appellee's medical experts how appellee's late-changed critical testimony, affected their medical opinion regarding the medical services appellee rendered to Gloria Prezelski. Appellants contend that this amounted to "such a denial of the rights of the appellant[s] as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case." TEX.R.APP.P. 81(b)(1).[3]

During the trial, appellants clearly put the trial judge on notice by properly objecting prior to appellee's medical experts being presented out of order and requesting 30 minutes cross examination of appellee "to clear up" something associated with the "proper" examination of appellee's expert witnesses. Further, appellants reiterated their complaint after the trial in a proper and timely motion for a new trial, which was likewise denied.

We conclude that in this case, the actions of the trial judge in refusing to grant appellants 30 minutes cross-examination of appellee prior to permitting appellee's

---

3. The dissent would deny appellant relief because a partial statement of facts was filed and appellants failed to comply with TEX.R.APP.P. 53(d) by not designating the point of error that would be relied upon at the time the partial statement of facts was requested. However, the dissent concedes that the statement of facts before this court consists of five volumes, plus final arguments, and all the medical testimony and rulings pertaining thereto. The dissent also recognizes that partial statement of facts are encouraged if there is no real need for the entire record.

While it may be true that the presumption in favor of appellant under TEX.R.APP.P. 53(d) may not be available because of a failure to comply statutorily with rule 53(d), the record before us is sufficient to review the complaints made.

It is largely uncontroverted and supported by this record 1) that prior to the out of order testimony of appellee's two medical experts, appellee contended and had so advised his medical experts that he had taken cephalometric x-rays of the appellant, 2) that appellants' request for 30 minutes of cross-examination of appellee prior to the out of order examination of appellee's medical expert witnesses was denied, 3) that over appellant's objection, appellee's medical expert witnesses were permitted to testify out of order and were excused, 4) that only after appellee's expert witnesses had testified and had been excused, did appellee change his testimony and admit for the first time that he had not taken cephalometric x-rays of the appellant, 5) that whether appellee had in fact taken cephalometric x-rays was critical, 6) that appellants' motion for new trial, grounded in the complaint before us, was denied, and 7) that appellants never had the opportunity to cross-examine appellee expert witnesses after appellee's critical late admission. Most, if not all of these facts are unchallenged, which permits this court to accept them as correct. TEX.R.APP.P. 74(f).

Further, the record shows that appellee's counsel repeatedly attempted to improperly collaterally impeach appellants' lone medical expert witness in violation of repeated court rulings.

The dissent chastises the majority for supposedly erroneously speculating when concluding that the error was harmful in the absence of a complete statement of facts. However, at the same time, the dissent finds justification in engaging in its own speculation by assuming that the testimony of appellee's experts would not have been affected had they been confronted by appellee's late critical admissions. This record and the unchallenged statements made by appellants in their brief sufficiently establish that appellants were materially deprived of the right to fairly present their case, and that under these circumstances they were entitled to a new trial, which was also denied.

medical experts to testify out of order, and in denying appellants' motion for new trial, denied appellants the right to present their case fairly. Whether this denial requires reversal, however, depends on whether it was reasonably calculated to cause and probably caused rendition of an improper judgment in the case. TEX.R.APP.P. 81(b)(1).

All medical malpractice cases rest almost entirely upon the testimony of expert medical witnesses. Presumably, these medical experts are impartial, medically qualified experts who will provide a guide for a lay jury to make its findings. Thus, it is urgent in prosecuting and defending such cases to be able to discredit or impeach the opinions of opposing medical experts who are so heavily relied upon by a lay jury. However, this should be accomplished within the bounds of the rules of evidence and certainly the rulings of the court.

■ Appellants presented one medical witness, Dr. John Helfrick. Dr. Helfrick's testimony was undermined considerably by the repeated efforts of appellee's counsel to collaterally impeach him in violation of the court's rulings. The trial court correctly sustained appellant's repeated objections and instructed the jury and counsel accordingly. While these actions cannot form the basis for a valid point of error since the trial judge properly sustained the objection, instructed the jury, and never denied appellant any relief requested, they can be considered in the application of TEX.R.APP.P. 81(b)(1).

■ This court has previously addressed the harmless error issue in *Nix v. H.R. Management Co., et al,* 733 S.W.2d 573 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.) stating:

> The Supreme Court recognized the impossibility of prescribing a specific test for determining whether any error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. [*Lorusso v. Members Mutual Insurance Co.,* 603 S.W.2d 818 (Tex.1980).] With that in mind, the Court has given, on at least two occasions, an example which we think useful in the instant case. The Supreme Court has stated that in a case in which the complaining party failed to prove his cause of action of defense, an error could not be said to have resulted in a materially unfair trial. On the other hand, when the trial is contested and the evidence is sharply conflicting, the error results in a materially unfair trial without showing more. *Lorusso,* 603 S.W.2d at 821; *Patterson Dental Co. v. Dunn,* 592 S.W.2d 914, 921 (Tex.1979). While in those cases the Court was speaking of juror strikes, the Court made clear in *Lorusso* that it was speaking of all errors of law by the trial court. *Lorusso,* 603 S.W.2d at 821.

*Nix, supra,* at 576.[4]

In *Lorusso v. Members Mut. Ins. Co., supra,* the Supreme Court of Texas stated:

> The language of the rule is clear and direct. The rule [5] recognizes that a litigant is not entitled to a perfect trial for,

---

4. Although the dissent has concluded there was no error here, it nevertheless finds it necessary to be critical of this court's holding in *Nix v. H.R. Management Co.,* 733 S.W.2d 573 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.). *Nix, supra,* found support in *Lorusso v. Members Mutual Insurance Co.,* 603 S.W.2d 818 (Tex.1980). The dissent contends that *Lorusso, supra* was misapplied by this court in *Nix, supra* and should not be applied in the case before us because the *Lorusso* decision only applies to cases which involve improperly allocated jury strikes. In so doing, the dissent ignores the language of the Texas Supreme Court:

> The rule [harmless error] by its very terms applies to all errors in that it draws no distinction as to the type of errors involved in its requirement for reversal.

*Lorusso, supra* at 820.

We know of no authority which sets one harmless error standard for improperly allocated jury strike errors and another standard for other types of errors. Further, the Texas Supreme Court has declared that the same standard exists as to all types of errors. *Lorusso, supra.*

5. Referring to Texas Rule of Civil Procedure 503, the predecessor of Texas Rule Appellate Procedure 184(b) which is the harmless error rule applicable to the Supreme Court. TEX.R. APP.P. 81(b)(1) is the harmless error rule applicable to the Courts of Appeals. Both rules for all practical purposes apply the same standard.

indeed, few trials are perfect. In recognition of this fact, the harmless error rule establishes a sound and common sense policy of not reversing a judgment unless the error or errors can be said to have contributed in a substantial way to bring about the adverse judgment. [citations omitted] The rule by its very terms applies to all errors in that it draws no distinction as to the type of errors involved in its requirement for reversal.

\* \* \* \* \* \*

.... [W]e expressly recognized the *Tamburello* [6] requirement that the complaining party show that the trial which resulted in the judgment against him was "materially unfair." In considering how this is met, we said:

> [W]hether any such error resulted in a materially unfair trial, however, must be decided from an examination of the entire trial record. For example, in a case in which the complaining party failed to prove his cause of action or defense, an error in allocating or equalizing strikes could not be said to have resulted in a materially unfair trial. On the other hand, when the trial is contested and the evidence is sharply conflicting, the error results in a materially unfair trial without showing more....

*Lorusso, supra* at 819, 820, 821.

This case was vigorously contested, and involved sharply conflicting evidence. Further, the trial judge unwittingly prevented appellants from exercising their right to elicit the crucial late admission from the appellee prior to the out of order testimony of appellee's experts. This prevented the appellants the opportunity to fairly question appellee's medical experts equipped with appellees pertinent late admission which could have very well changed or at least weakened appellee's medical experts' opinions. Further, the court failed to correct the situation by granting a new trial.

Moreover, the only medical expert presented by the appellants was considerably weakened by repeated attempts at collateral impeachment in violation of the court rulings.

We therefore must conclude, that the foregoing errors resulted in a materially unfair trial which probably caused the rendition of an improper judgment in this case. TEX.R.APP.P. 81(b)(1).

The judgment is reversed and the cause is remanded for a new trial.

PEEPLES, Justice, dissenting.

I respectfully dissent. The majority has reversed on the basis of a trial ruling that was within the court's discretion, even though we have only a partial statement of facts, and any error was harmless.

1. *Discretion to permit witnesses out of order.* The trial judge was well within her discretion in allowing the defense to call two expert witnesses out of order. Trial judges are given discretion in determining the order in which witnesses testify. *Ochoa v. Winerich Motor Sales Co.,* 127 Tex. 542, 94 S.W.2d 416, 421 (1936); *Baker v. Sturgeon,* 361 S.W.2d 610, 614 (Tex.Civ. App.—Texarkana 1962, no writ); *Travelers Insurance Co. v. Hurst,* 358 S.W.2d 883, 886 (Tex.Civ.App.—Texarkana 1962, writ ref'd n.r.e.); *Hemsell v. Summers,* 153 S.W.2d 305, 309 (Tex.Civ.App.—Amarillo 1941, no writ); *Plunkett v. Simmons,* 63 S.W.2d 313, 315 (Tex.Civ.App.—Waco 1933, writ dism'd); TEX.R.CIV.EVID. 611(a) (trial court shall exercise reasonable control over mode and order of interrogating witnesses). Under TEX.R.CIV.P. 265 the court should have explicitly stated her reasons for deviating from the usual sequence. But plaintiffs did not ask her to do so and do not complain in this court that good cause was not explicitly stated.

The facts amply support the court's implied finding of good cause and her exercise of discretion.[1] Although the case had

---

**6.** *Tamburello v. Welch,* 392 S.W.2d 114 (Tex. 1965).

**1.** Trial judges and lawyers will be surprised to learn that plaintiff's counsel made an adequate

and specific objection, and that the court committed reversible error, during the following sequence of events. It is obvious that the court felt that she was simply enforcing an agreement

been specially set (by agreement, six months earlier) for Monday, October 26, 1987, plaintiffs sought and were given a continuance until Wednesday. Defendant's out-of-town experts had been scheduled at certain times in reliance on the Monday special setting. When the plaintiffs' attorney sought the two-day continuance, he expressly agreed to let the defendant present his expert witnesses out of order, on the days they had been originally scheduled. The court was obviously concerned about accommodating expert witnesses

from out of town. Moreover, plaintiffs' counsel had already called defendant as an adverse party, examined him for several hours, and then passed the witness. In other words, at the time of the court's ruling plaintiff's counsel was asking to interrupt defense counsel's examination of her own client for further cross-examination. Dr. Christiansen had testified for one full day.

Even if other judges might have ruled differently, which I doubt, it is inconceivable that her ruling was an abuse of discre-

that plaintiffs had made in her presence when seeking a two-day continuance.

MS. RESER: [defendant's counsel] Your Honor I had told plaintiff's counsel I was bringing Dan Verne Monday morning and *it was my understanding I would be able to take him out of turn. And I would like to proceed with him at this time.*

MR. VICKERY: [plaintiffs' counsel]: *I have no objection to bringing Dr. Verne out of turn in the case. I told her the other day I do object to her doing it prior to finishing up with Dr. Christiansen.*

The reason isn't to be horsey. The reason is there are some things that I need to clear up based on the position that he has taken in court in order to properly examine Dr. Verne. And she had said before lunch she had 2 hours with him and she went the rest of the full afternoon. So she can't possibly have much more with Dr. Christiansen. But I need to come back and clear up some things in my own mind in order to—

THE COURT: How long is your redirect with him?

MR. VICKERY: 30 minutes.

THE COURT: Or recross.

MS. RESER: Your Honor, I'm going to have much longer with Dr. Christiansen. It's going to take longer because they've voir dired us on practically every piece of evidence. And I'm not complaining about that. That's their right. *But that was our original agreement.*

They're going to bring Dr. Helfrick out of turn again and I would just ask the court's permission to put Dr. Verne on. He is a busy surgeon and this was my arrangement that I had made with him to come testify this morning.

MR. VICKERY: Let me suggest this. If she's saying to the court that she's got a lot more to go with Dr. Christiansen, why don't I recross on the matters she's crossed on now? I'll take my 30 minutes there so I'm clear and then she can proceed with Dr. Verne. And then if she needs to put him back up for more later, you know, have at it.

THE COURT: Is that agreeable?

MS. RESER: I would prefer just to proceed with Dr. Christiansen [sic]. I don't see why he's taken—he's had an opportunity to take Dr. Verne's deposition. Mrs. Kilbride [co-counsel for plaintiffs] for an hour on the phone talked to him. *I don't see any reason why they should be able to do a recross of Dr. Christiansen in the middle before I finish my cross-examination of my own client. I mean I just want to put on Dr. Verne out of turn and that was what we had agreed to at the beginning of this trial, your Honor.* I was going to—

THE COURT: How long would he take, Dr. Verne?

MS. RESER: I think he will take this morning.

THE COURT: Okay. I'll allow you to call him out of order.

MS. RESER: Okay. (emphasis added).

At this point the discussion shifted to other subjects: (1) the court told the lawyers to have their witnesses talk louder, (2) exhibits were marked, discussed, and admitted, (3) the lawyers established where each would be positioned during the use of a television. Next, the jurors were brought in; the court welcomed them and then made this statement:

The Court: *The plaintiffs have agreed* that she [defense counsel] may call a witness out of turn, so the defendant is calling a witness out of turn at this time. (emphasis added). A fair reading of this record convinces me that no objection was made, counsel certainly did not state a ground for any objection, and the court obviously thought she was carrying through on the lawyer's agreement to allow Verne to be called out of order. I cannot understand how any of this judicial action can be called an abuse of discretion. Of course, the partial statement of facts filed by plaintiffs does not include the *terms* of the agreement that everyone admits was made.

Concerning the second defense expert, Dr. Schow, plaintiffs did not object in any way when he was called to the stand. As Dr. Schow took the stand, no objection was voiced either before or after the court said, "It's my understanding the defendant is calling a witness [Dr. Schow] out of turn, is that correct?"

tion, as that concept has been defined. *See Babcock v. Northwest Memorial Hosp.*, 767 S.W.2d 705, 709r (Tex.1989) (test is whether court "acted without reference to any guiding rules and principles or whether the act was arbitrary and unreasonable"); *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 298 (Tex.1986) (test is "whether the court acted without reference to any guiding rules and principles"); *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985) (test is whether "the facts and law permit[ted] the trial court to make but one decision"). Nothing in the record or the briefs indicates that plaintiffs' counsel ever asked the court to have either witness return for further questions.

The majority says the agreement did not comply with rule 11. Of course, we do not know whether the agreement was made on the record because we have only a partial statement of facts. For the reasons stated in part two of this dissent, that should end the matter. But there was clearly a general agreement to let defense experts testify out of order. Plaintiffs' counsel expressly admits that there was. Obviously, the trial court was present when the attorneys agreed because that was when she postponed the trial two days to accommodate plaintiffs' counsel. Even if no one anticipated precisely the ultimate turn of events, how can this appellate court hold that the trial judge abused her discretion in following an agreement made during her presence and with her consent?

I am especially troubled by the message this decision sends to trial judges, who struggle daily to push cases to trial while at the same time being flexible and reasonable in accommodating the schedules of lawyers and witnesses. Intimidated by this decision, some courts may now rigidly deny a plaintiff's request for a short postponement on the ground that they no longer have meaningful discretion to let witnesses testify out of order, even when the plaintiff's attorney initially agrees, as he did in this case.

2. *Partial statement of facts.* The majority has found reversible error even though plaintiff brought forward only a partial statement of facts without complying with TEX.R.APP.P. 53(d) [formerly TEX.R.CIV.P. 377]. In my view, the majority has not faithfully applied that rule or TEX.R.APP.P. 50(d), which says, "The burden is on the appellant, or other party seeking review, to see that a sufficient record is presented to show error requiring reversal."

It is undisputed that we have only a partial statement of facts. The court reporter's amended certificate says that the statement of facts "contains a true and correct transcription of *the parts* of the testimony and proceedings *requested* to be transcribed. . . ." (emphasis added). Two volumes of the statement of facts conclude with these words: "Whereupon, this concludes testimony *requested* to be transcribed on 11–4–87" and "Whereupon, this concludes the transcription of *requested* testimony." (emphasis added).

It is also undisputed that plaintiff did not state the points she would be relying on. Had she done so, we would presume that the omitted testimony has no bearing on the appeal. *Producer's Constr. Co. v. Muegge*, 669 S.W.2d 717, 718 (Tex.1984); TEX.R.APP.P. 53(d). An appellant must either comply with rule 53(d) or file a complete statement of facts; otherwise it will be presumed that the omitted portions support the judgment. *Englander Co. v. Kennedy*, 428 S.W.2d 806 (Tex.1968); *Prather v. McNally*, 757 S.W.2d 124, 125–26 (Tex. App.—Dallas 1988, no writ); *Ball v. Farm & Home Savings Ass'n*, 747 S.W.2d 420, 425 (Tex.App.—Fort Worth 1988, writ denied); *Texas Constr. Group, Inc. v. City of Pasadena*, 663 S.W.2d 102, 105 (Tex.App.— Houston [14th Dist.] 1983, writ dism'd). *See also Murray v. Devco, Ltd.*, 731 S.W.2d 555, 557–58 (Tex.1987).

An appellant has the burden of bringing to the appellate court a record "to prove error and that it was harmful." *Escontrias v. Apodaca*, 629 S.W.2d 697, 699 (Tex. 1982); Tex.R.App.P. 50(d). An appellate court cannot determine whether error is harmless or reversible without a complete record. *Dennis v. Hulse*, 362 S.W.2d 308, 310 (Tex.1962); *Gordon v. Aetna Casualty*

& Surety Co., 351 S.W.2d 602, 603–604 (Tex.Civ.App.—Eastland 1961, writ ref'd); *DeLeon v. Otis Elevator Co.,* 610 S.W.2d 179, 181–82 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.). This rule has been applied when a court allowed a rebuttal witness to testify out of order, and only a partial statement of facts was filed. *Flora v. Scott,* 398 S.W.2d 627, 632 (Tex.Civ.App. —Dallas 1965, writ ref'd n.r.e.).

I do not suggest that we have a short statement of facts; it consists of five volumes plus the final arguments. But we do not know who else testified in this eight-day trial, which issues they testified about, or what they said. The statement of facts consists entirely of the testimony of four expert witnesses: Doctors Helfrick (plaintiffs' expert), Schow and Verne (defendant's experts), and Christiansen (defendant). *Two days of testimony (Thursday and Friday, November 5 and 6) are missing completely. The record does not even contain the testimony of the plaintiff, Mrs. Prezelski.* Three other witnesses— Ms. Kinsey, Mrs. Morales, and Dr. Johnson—were mentioned by name in the final arguments, but their testimony is not before us. We cannot be sure that we are privy to everything that bears on the harmfulness of the witnesses' testifying out of order. We can only speculate about whether, under TEX.R.APP.P. 81(b)(1), this sequence of events was "reasonably calculated to cause and probably did cause rendition of an improper judgment."

The law should, and does, encourage attorneys to omit from the record anything that has no bearing on the appeal. But TEX.R.APP.P. 53(d) provides a sensible method for doing this. When appellant notifies appellee of his points of error, appellee can then decide if the omitted testimony pertains to those points of error. If so, under rule 53(d) he must designate the "additional portions of the evidence to be included in the statement of facts." I cannot accept the view that we can ignore rule 53(d) when we think we have all the testi-

mony we need. Under that approach, appellate courts would apparently decide ad hoc when to enforce rule 53(d) and when not to.

The consequences of failing to follow rule 53(d) are clear. We must presume that the omitted parts of the trial support the court's ruling, and that plaintiffs have not shown reversible error.

3. *Improper reversible error standard.* The majority's reversible error analysis is incorrect, perpetuating an error that began in *Nix. v. H.R. Management Co.,* 733 S.W.2d 573 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.). The majority relies on language from *Nix* that says an appellant establishes reversible error by showing that the trial was "materially unfair.... [W]hen the trial is contested and the evidence is *sharply conflicting,* the error results in a materially unfair trial *without showing more." Id.* at 576 (emphasis added). Not one Texas court has adopted the *Nix* reinterpretation of harmless error. If the majority's analysis were sound law, any trial errors in *Pennzoil v. Texaco,*[2]—which surely qualifies as a "contested" trial in which the evidence was "sharply conflicting"—would have been reversible "without showing more."

*Nix* and the majority cite two cases involving erroneous allocation of jury strikes. *See Lorusso v. Members Mut. Ins. Co.,* 603 S.W.2d 818 (Tex.1980); *Patterson Dental Co. v. Dunn,* 592 S.W.2d 914 (Tex.1979). But the *Lorusso* court itself examined the record conscientiously for harm. *Lorusso* adhered to settled principles, as revealed in the following passage:

> We recognize the impossibility of prescribing a specific test for determining whether any error, be it the improper admission or exclusion of evidence, improper argument, or the giving or depriving of a party of the proper number of peremptory challenges, "was reasonably calculated to cause and probably did cause the rendition of an improper judg-

2. *Texaco, Inc. v. Pennzoil Co.,* 729 S.W.2d 768 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dismissed,* —— U.S. ——, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988). In *Pennzoil,* the court found various errors (special issue submission and admission of evidence) harmless under the traditional standard. 729 S.W.2d at 810–12, 815, 841–42.

ment." Such a determination necessarily is a *judgment call* entrusted to the sound discretion and good senses of the reviewing court. It is clear, however, that such a judgment call must be determined from an *evaluation of the whole case. Standard Fire Insurance Co. v. Reese,* 584 S.W.2d 835 (Tex.1979).

603 S.W.2d at 821 (emphasis added). After reviewing the record—a partial statement of facts, as in the present case—the *Lorusso* court held the error was harmless. Shortly afterward, in *First Employees Ins. Co. v. Skinner,* 646 S.W.2d 170, 172 (Tex. 1983), a unanimous court cited *Lorusso* for the following well-settled principle:

> [The decision whether error is reversible or harmless] is a judgment call entrusted to the sound discretion and good sense of the reviewing court from an evaluation of the whole case. *Lorusso v. Members Mutual Ins. Co., supra* at 821.

I respectfully submit that the *Nix* court and the present majority have misread *Lorusso.*

I agree that when the error involves jury strikes, it is indeed difficult to show harm without probing the minds of the jurors who sat and those who would have sat if the strikes had been properly distributed. For this reason the reversible error standard has properly been relaxed when peremptory challenges have been improperly allocated. *See Garcia v. Central Power & Light Co.,* 704 S.W.2d 734, 737 (Tex.1986) (where peremptory challenges are improperly allocated, test is whether trial was "hotly contested" and evidence "sharply conflicting," resulting in "materially unfair" trial "without showing more").

But when the error involves evidence and not jury strikes, the traditional standard of TEX.R.APP.P. 81(b)(1) should apply. The error must amount to "such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment." That standard requires us to faithfully assess the entire record, onerous and time-consuming as that task may be.

Recently the supreme court has applied rule 81(b)(1) and evaluated the entire record without reference to the notion that the reviewing court need only proclaim that the trial was contested and the evidence sharply conflicting. *See Boothe v. Hausler,* 766 S.W.2d 788, 789 (Tex.1989); *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396–97 (Tex.1989). I would follow *Boothe, Gee,* and *Skinner* in cases involving the admission or exclusion of evidence and other such trial rulings.

A review of the record shows that during his opening statement, plaintiffs' counsel stated his belief that the defendant had not taken a cephalmetric x-ray. Defendant testified he thought he had taken a cephalometric x-ray, but had sent it to a doctor in Houston for review. A cephalometric x-ray depicts the patient's head from a standard distance, making measurement and comparison with other x-rays more precise. Doctors Verne and Schow said that such x-rays should be taken, and that they could find no evidence in defendant's records that he had taken them. But, they said, in any event the surgery itself was proper and successful. Later in the trial, after Verne and Schow had testified, the defendant conceded that his records did not show that he had taken a cephalometric x-ray, but an ordinary lateral x-ray. Everyone had copies of these records well in advance of trial.

Obviously the heart of Verne's and Schow's testimony was that defendant achieved a successful and non-negligent result. Surely those opinions would not have changed if they had been explicitly told that only an ordinary lateral x-ray was taken. In other words, Doctors Verne and Schow said in essence that whatever x-ray was taken, the surgery was successful and was performed with competence. On this record, there is no showing that the court's ruling—which I believe was within her discretion—was reasonably calculated to cause and probably did cause an improper judgment.

For all these reasons, I respectfully dissent from the majority's opinion and judgment reversing for a new trial.