The STATE of Texas, Petitioner,

v.

Mary A. Stephenson BAKER et al., Respondents.

No. B–7344.

Supreme Court of Texas.

Nov. 29, 1978.

John L. Hill, Atty. Gen., Dean Arrington and Watson C. Arnold, Asst. Attys. Gen., Austin, for petitioner.

Garner, Vickers & Purdom, Robert E. Garner, Lubbock, Kolander & Templeton, Amarillo, for respondents.

POPE, Justice.

The question presented is whether the trial court erred in a series of rulings which permitted the condemnees to introduce evidence about the condemnees' use of water from a water well located on a neighbor's tract of land. The State of Texas condemned a little more than five acres of land belonging jointly to Mrs. Baker and her children, the Stephensons. The part taken was for the purpose of enlarging the right-of-way for I.H. 27. The condemnees received $16,662.60 for the part taken. The State complains of the award of $64,900.00 for damages to the remainder, which consisted of a little more than 107 acres of farmland. The court of civil appeals in an unpublished opinion affirmed the judgment. We reverse the judgments of the courts below.

There was an irrigation well located on the five-acre tract that the State condemned. In 1972, Mrs. Baker and the Stephensons sold thirty acres of their adjoining land to Larry Best. There was also a good well located on that tract. The State, in a separate condemnation suit, was taking a part of the Best land, including the well. The Best well was described as a four-inch well capable of producing 175 gallons a minute.

The trial court overruled the State's motion in limine which sought to exclude information that Roy Stephenson used the water from the Best well to irrigate the Stephenson farm. The Stephensons were using the Best well under an oral lease agreement which would expire in thirty days. At the trial, the State renewed and kept alive its many objections to the repeated references by the condemnees to the availability of the water from the Best well. The basis for admitting the evidence was explained: "not as a measure or an item of damages but as an element of information . . . to guide the jury in arriving at the correct measure of damages." It is our opinion that the jury was led to believe that the condemnees were losing not just one well, but two wells, their own and the one they had already sold to Mr. Best.

Land has some value as dry land; it has a greater value as irrigated land. All of the Stephensons' acreage was dependent upon

irrigation wells. There was evidence that the Stephenson well that was taken by the State in this action was not capable of fully watering all of the remainder tract of 107 acres. Several drilling efforts to find water on the remainder proved unsuccessful. Mr. Roy Stephenson testified that by use of the water drawn only from the Stephenson well, all of the remainder tract could be watered, but, in his words, "we had to crank way early to get water over but we covered awful light water . . . ." The information, however, that the jury received was that all of the Stephenson tract was good, productive, and fully irrigated land. The Stephensons testified and produced proof that they cultivated the entire remainder and irrigated all of it by the commingled water from both the Stephenson and Best wells. They proved that all of the remainder tract produced cotton, wheat, seed milo maize, regular milo maize, and sunflowers. They had to irrigate the crops as many as three times a year, and they produced two crops a year. The seed milo requires special cultivation and more water than ordinary milo. The Stephensons recounted the crop yields and prices they received from the sale of the irrigated crops for the entire 107 acres during 1973, 1974, and 1975. The information, therefore, which was admitted to guide the jury in arriving at damages, portrayed bountiful crops that were produced by the water supply from the water wells on and off the Stephenson tract.

In *State v. Baker Bros. Nursery*, 366 S.W.2d 212 (Tex.1963), this court in a kindred case held that this kind of evidence was inadmissible. The defendant nursery complained about the trial court's rejection of evidence that the nursery had an available supply of water from a lake in the vicinity for its condemned and remainder lands. The condemnee offered a letter from the Mayor of Arlington which granted permission for the condemnee to take water from Lake Arlington to irrigate its lands. This court approved the exclusion of the evidence. One reason expressed for the exclusion was that there was no evidence of a binding contract which gave the condemnee the right to use water from the lake. That is the same factual situation in the present case.

The abundant evidence in this record that the condemnee was using water from the Best well was harmful for two reasons. A partially irrigated remainder was represented to the jury as fully irrigated. This meant that land of limited productivity could be valued as land of high productivity. Perhaps more harmful was the evidence that, not only was the Stephenson well taken for the right-of-way, the Best well was also in the new right-of-way, and it too would be lost as a source of water for the Stephensons' remainder tract.

The condemnee produced some evidence which shows that the one good well on the Stephenson tract could irrigate the remainder "but we covered awful light water . . . ." The question is not whether there is some evidence in the record which supports the finding; the question is whether, with that brief and weak testimony, there was harm by filling the record full of other testimony that was hurtful.

At the trial, the State made its objection when Mr. Stephenson first began testifying about his use of the water from the Best well. The trial court, at that stage, permitted the evidence about the oral lease of the water from the Best tract. When Mr. Stephenson was later asked again if he had permission to extract water from the Best tract and put it in his irrigation system, the State repeated the objection. The court again overruled the objection and Mr. Stephenson testified about his use of the water on both the Stephenson remainder and the Best tract. The State then objected a third time.

When Mr. Stephenson was asked to testify about his cultivation of the Best tract and the use of the water from the Best well, the State objected and moved for mistrial. In the motion for mistrial, the State called attention to the emphasis that was being made of the available water supply from the Best well by stating, "its gone to that point [of mistrial] and they keep plug-

gin' away and pluggin' away on it, and we think its highly prejudicial to us and we're going to ask for a mistrial." Then, Mr. Stephenson, having proved that they had an ample supply of water from their own and the Best lands, testified about the high productivity of the irrigated remainder. Still later, when Mr. Stephenson testified about his cultivation of the Best tract and other tracts in the vicinity, the State objected and again moved for mistrial. The trial court at that point permitted the testimony about his cultivation of other lands "in the immediate vicinity but I don't want to get things plumb out of hand going all over the county."

Without detailing each incident, the record shows that the State made other objections each time the condemnees returned to the evidence about water wells, crops, and lands other than what was involved in the suit on trial. Finally the condemnees' counsel asked the court to give the State "a running objection and maybe we can get on with it." The State protected its record.

One may ask: If the Stephensons, as condemnees, had plenty of water from their own well, why did they make the oral agreement to use the water from the Best well? If the evidence is now regarded by the Stephensons as harmless, why did they consider it so important that they emphasized and presented it again and again to the jury? The evidence, in our judgment, was harmful.

The judgments of the courts below are reversed and the cause is remanded to the trial court.