John STERGIOU and Main Marine
Repair and Industrial Cleaning
Co., Appellants,

v.

GENERAL METAL FABRICATING
CORPORATION; G.M.F. Leasing,
Inc.; and Arnold Curry, Appellees.

No. 01-01-00691-CV.

Court of Appeals of Texas,
Houston (1st Dist.).

March 27, 2003.

Rehearing Overruled July 11, 2003.

**2**

Jeff Nobles, Beirne, Maynard & Parsons, L.L.P., Anastassios Triantaphyllis,

Kerri J. Dorman, Andrew Kaplan, Weycer, Kaplan, Pulaski & Zuber, P.C., Houston, TX, for Appellant.

Edmund L. Cogburn, Helen A. Cassidy, Storey, Moore & McCally, Houston, TX, for Appellee.

Panel consists of Justices HEDGES, JENNINGS, and ALCALA.

## OPINION

ADELE HEDGES, Justice.

Plaintiffs/appellees, General Metal Fabricating Corporation; G.M.F. Leasing, Inc.; and Arnold Curry, sued defendants/appellants, John Stergiou and Main Marine Repair and Industrial Cleaning Co., for breach of an oral contract, breach of fiduciary duty, and fraud. Stergiou counterclaimed for violations of the Business Corporation Act, breach of fiduciary duty, and other causes of action. The jury found in favor of Curry. The trial court rendered judgment based on the verdict and awarded Curry damages in the amount of $50,000 for fraud, $50,000 for punitives, $10,000 for breach of fiduciary duties, and $140,000 for attorney's fees. The trial court rendered a take-nothing judgment on Stergiou's counterclaims. We reverse and remand.

## Background

Arnold Curry is a metal fabricator, an artisan who cuts and shapes industrial metal parts. John Stergiou owns Main Marine Repair and Industrial Cleaning Co. (Main Marine), a business that specializes in ship repair. The two men had known each other for several years because Curry had performed metal work for Main Marine in the past.

In April 1996, Curry wanted to start his own metal fabrication company and ap-

proached Stergiou for help. Stergiou offered Curry an unused shop space within the Main Marine facilities to begin operating. In exchange, Curry agreed to do maintenance jobs and to perform small fabrication projects for Main Marine free of charge. In April 1996, Curry began General Metal Fabricating (GMF) as a sole proprietorship. Stergiou provided the workspace, equipment, and initial funding. Curry's wife, Janet Curry, assisted in the business.

As GMF expanded, Curry sought to build a new, larger facility. Stergiou conveyed some land next to Main Marine for GMF to build the "blue building." Stergiou assumed personal liability for a loan from Frost Bank that GMF used to finance the blue building.

After five months of operation, GMF was incorporated on September 18, 1996. Curry and Stergiou were the incorporators and initial directors. On October 18, 1996, GMF issued stock certificates representing 4,000 shares: 2,000 were issued to Curry and 2,000 were issued to Stergiou. On February 27, 1997, GMF Leasing, Inc. was formed and incorporated to manage and purchase the real estate used in the GMF business.

In September 1999, a dispute arose regarding the ownership of the companies. Curry asserted that Stergiou did not really own stock in GMF or GMF Leasing; instead, the stock was issued to Stergiou as collateral. According to Curry, the parties had agreed that Stergiou would return the stock when (1) Stergiou was repaid for his financial contributions to the GMF corporations, and (2) Stergiou was released from liability on the Frost Bank loan. In response, Stergiou contended that the stock certificates issued to him correctly represented his shares of ownership in the corporations. The jury found for Curry, and

the trial court rendered judgment based on the verdict.

In six issues, Stergiou contends that (1) the evidence is legally and factually insufficient to establish an oral agreement; (2) the statute of frauds bars the alleged oral agreement; (3) the elements of a stock pledge were not satisfied; (4) the conditions precedent under the alleged oral contract were not satisfied; (5) the trial court erred in excluding evidence; and (6) the trial court erred in overruling the motion for new trial based on newly-discovered evidence.

### Exclusion of Evidence

In the fifth issue, Stergiou contends that the trial court erred in excluding evidence.

The agreement in this case is set forth in Jury Question No. 2 as follows:

> Did John Stergiou and Arnold Curry agree that if (a) Arnold and the GMF Corporations made payment of the loans made by John, Angela Stergiou, and Main Marine to Arnold and the GMF Corporations and (b) obtained release of the guaranty and cosigned obligations of John, Angela, and Main Marine for Arnold and the GMF Corporations, then John would transfer and cause transfer to Arnold of all of the stock in the GMF Corporations owned or controlled by John.

ANSWER: YES.

The jury agreed with Curry's contention that the parties had an oral agreement that Stergiou would surrender his stock once he was repaid and released from corporate obligations. Stergiou's position, in contrast, was that he owned the stock outright and could sell it as he wished. Stergiou attempted to introduce evidence showing that Curry recognized Stergiou's outright ownership of the stock. For example, Stergiou sought to introduce evi-

dence of Curry's offers to buy Stergiou's shares, which are inconsistent with the terms of the oral contract. According to Stergiou, it is illogical that Curry would try to buy Stergiou's shares if the parties did indeed have an oral contract that Stergiou would later surrender those shares.

Set forth below, we will analyze whether the trial court properly excluded: the Zuber letter [Defense Exhibit 19a] and various documents and testimony alleged to be offers to compromise and settle, which include Curry's timeline [Defense Exhibit 38], two Letters of Intent [Defense Exhibits 12A & 37], and Zuber's testimony.

### The 1997 Zuber Letter

■ Stergiou complains that the trial court improperly excluded Defense Exhibit 19a, a letter dated April 11, 1997, from Stergiou's attorney, Gordon Zuber, to Stergiou and Curry. The letter enclosed "a draft copy of a proposed Buy–Sell Agreement." Zuber drafted the attached Buy–Sell Agreement, which stated as follows:

> Shareholders [Stergiou and Curry] are the owners of all of the Shares of the Company; and ... the parties believe that it is in the best interest of the Company and the Shareholders to make provisions for the future disposition of the Shares of the Company now owned or hereafter acquired by the Shareholders.

Stergiou attempted to introduce the Zuber letter during the cross-examination of Curry. Curry's counsel objected that the letter was a self-serving hearsay communication. TEX.R. EVID. 801(d). The letter is on Zuber's firm's letterhead and was signed by Zuber. Curry did not sign, approve, ratify, or adopt it. The trial court sustained the objection and excluded the letter. Stergiou again attempted to introduce the Zuber letter in a bill of exceptions during the re-direct examina-

tion of Zuber. The trial court ruled that it had previously sustained the hearsay objection and "stays with the objection."

Stergiou did not establish any exceptions to the hearsay rule, such as the business record exception. *See* TEX.R. EVID. 802, 803, 804. We hold that the trial court did not err in excluding the Zuber letter.

### The 1999 Compromise and Settlement Evidence

Stergiou contends that the trial court improperly excluded other evidence that proved his outright ownership of the corporate stock. Defense Exhibit 38 is a timeline prepared by Curry in 1999. Defense Exhibits 12A and 37 are letters of intent dated 1999.

Curry sought to exclude these documents under Rule of Evidence 408, which prohibits evidence of attempts to compromise a claim. TEX.R. EVID. 408. Curry argued that the documents were created after the dispute arose; therefore, they are inadmissible on the grounds of compromise and settlement. The trial court sustained the objections and excluded the evidence.

As authority for his position, Stergiou relies on this Court's opinion in *GTE Mobilnet of South Texas Ltd. Partnership v. Telecell Cellular, Inc.*, 955 S.W.2d 286 (Tex.App.-Houston [1st Dist.] 1997, writ denied). In *GTE*, this Court held that a letter was not an offer to settle a claim because it did not request that the plaintiffs drop any of their claims or relinquish any of their rights. *Id.* at 298. It did not ask for any concessions or seek to impose any conditions. *Id.* The defendants' subjective belief that the letter was a settlement offer was a legal conclusion and was not evidence that the letter was, in fact, a settlement offer. *Id.* at 299.

Curry contends that Stergiou waived this argument because he did not present it to the trial court. Tex.R.App. P. 33.1. When Stergiou attempted to introduce the evidence at trial, Curry objected based on an offer to compromise and settle. Stergiou did not respond with the argument set forth in *GTE*. Curry contends that Stergiou's failure to respond constitutes a waiver. We disagree. Generally, to preserve error regarding a ruling admitting evidence, a party must make a timely, specific objection when evidence is offered. Tex.R. Evid. 103(a)(1); Tex. R.App. P. 33.1(a)(1). Curry does not assert that Stergiou failed to object. Curry complains instead that Stergiou failed to respond to Curry's objection. Stergiou was the proponent of the evidence; Curry properly objected as its opponent. To preserve error regarding a ruling excluding evidence, the substance of the evidence must be made known to the trial court by offer or apparent from the context of the questioning. Tex.R. Evid. 103(a)(2). In order to preserve the trial court's adverse ruling in excluding the evidence under the specific circumstances of this case, Stergiou was not required to respond to Curry's objection by apprising the trial court of the analysis set forth in the *GTE* case.

The timeline and the two letters of intent do not mention a compromise or settlement. They do not request that Curry drop any claims or relinquish any rights. *See GTE*, 955 S.W.2d at 298. They do not mention any concessions or seek to impose any conditions. *See id.* Curry's subjective belief that the documents were settlement offers was a legal conclusion, and therefore, was not evidence that the documents were, in fact, settlement offers. *See id.*

Accordingly, we hold that exclusion of these documents was error. The question becomes whether the error probably caused the rendition of an improper judgment. Tex.R.App. P. 44.1(a).

### The Timeline

The Curry's timeline (Defense Exhibit 38) was a prior version of another timeline (Plaintiff's Exhibit 12), which was admitted in evidence. The two timelines are essentially the same. Error in admitting evidence is generally harmless if the contested evidence is merely cumulative of properly admitted evidence. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 230 (Tex.1990). Stergiou has not shown how the excluded timeline substantially differs from the properly admitted one. We hold that any error in excluding the timeline was not harmful.

### The Letters of Intent

Defense Exhibit 12A is a draft letter of intent prepared on Curry's behalf by Jason Von Luternow, a financial planner recruited by Curry. The draft stated that Curry was interested in acquiring full ownership of the companies. In response, Zuber prepared Defense Exhibit 37, a second letter of intent on Stergiou's behalf, which stated that Stergiou is the owner of one half of the shares of stock in the companies.

In connection with Defense Exhibit 37, Stergiou attempted to admit testimony by Zuber regarding a meeting in his law office in November 1999. Outside the presence of the jury, Zuber testified that Curry and Stergiou met "to negotiate the purchase of Mr. Stergiou's stock in the companies and to divide the real estate. . . . The only dispute was whether or not Mr. Stergiou had access to the company by virtue of his ownership." Zuber explained that no one mentioned the "pledge theory" or "collateral theory" at the meeting, and the first time he became aware of these theories was when Curry filed suit. Zuber further testified that he

did not know if Curry was attempting to settle any dispute by offering to buy the stock.

At oral argument, counsel for Curry argued that there was no harm in excluding Zuber's testimony because the jury heard Curry testify that the meeting was an "ambush." Curry's testimony is as follows:

Q. Mr. Curry, did you have a meeting with Gordon Zuber back in April 11—not April 11—April or end of March of 1997 at the offices of Gordon Zuber in the presence of John Stergiou?

A. No, I couldn't call it that.

Q. Was there a meeting, sir, there?

A. No, there was not a meeting at which I attended.

Q. What was it?

A. It was an ambush.... John says, "Hey, we need to go look at a job," and we went and he drives to his attorney's office and says, "Here. I need to stop by here. Come on up." We go in there into a conference room where he has attorneys and they start asking questions and John says, "I want to do this, this, and this," and they sent me a document over afterwards and sent me this thing and said, "Here, sign this."

Zuber's testimony in connection with Defense Exhibit 37 referred to a 1999 meeting, while Curry discussed a 1997 meeting. Curry simply referred to "a document," instead of specifically identifying Defense Exhibit 37. Therefore, Zuber and Curry may have been testifying about different documents and different meetings. We cannot conclude that Curry's testimony alleviated the harm in excluding Zuber's testimony.[1]

We hold that the trial court erred in excluding the letters of intent and Zuber's testimony. The jury was prevented from hearing evidence showing that Curry recognized Stergiou's outright ownership of the stock. This was a hotly-contested, fact-intensive case. The excluded evidence provided powerful substantiation of Stergiou's contentions; in its absence, Stergiou had only his word. Exclusion of this evidence probably caused the rendition of an improper judgment. Thus, we further hold that the error was harmful. Tex. R.App. P. 44.1(a).

We sustain the fifth issue insofar as it covers the letters of intent and Zuber's testimony regarding the November 1999 meeting. Because this issue is dispositive, we need not address the remaining issues and decline to do so.

### Conclusion

We reverse the judgment of the trial court and remand the cause for a new trial.

---

1. During Stergiou's testimony, the reference to Defense Exhibit 37 occurred outside the presence of the jury.