Deborah Sue McSHANE and James Patrick McShane, Appellants,

v.

BAY AREA HEALTHCARE GROUP, LTD., Individually and d/b/a the Corpus Christi Medical Center–Bay Area, et al., Appellees.

No. 13–04–174–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Oct. 6, 2005.

Rehearing Overruled Nov. 10, 2005.

Kathleen P. McCartan, Mark R. Mueller, Mueller Law Office, Max Freeman, Austin, Vincent L. Marable III, Paul Webb, P.C., Wharton, for appellants.

John A. Scully, Cooper & Scully, Houston, Rick Rogers, Porter, Rogers, Dahlman & Gordon, P.C., Russell H. McMains, Law Office of Russell H. McMains, Corpus Christi, A. Scott Johnson, Johnson, Hanan, Heron & Trout, Oklahoma City, OK, Leslie C. Weeks, Stephen J. Rodolf, Rodolf & Todd, Tulsa, OK, Diana L. Faust, R. Brent Cooper, Cooper & Scully, Dallas, for appellees.

Before Justices YAÑEZ, CASTILLO, and GARZA.

## OPINION

Opinion by Justice GARZA.

Appellants, Deborah Sue McShane and James Patrick McShane, individually and as next friends of Maggie Yvonne McShane, a minor, sued appellees, Bay Area Healthcare Group, Ltd., individually and d/b/a Corpus Christi Medical Center–Bay Area; and Columbia Hospital Corporation of Bay Area, individually and as a partner of Bay Area Healthcare Group, Ltd. Appellants sought to recover for injuries sustained during Deborah McShane's labor and delivery of her daughter, Maggie, who is severely brain damaged and suffers from cerebral palsy, developmental disability, and mental retardation. Appellants alleged that the negligence of appellees, either directly or vicariously through the negligence of their nursing staff, caused Maggie's injuries. The case was tried to a jury, which returned a 10–2 verdict against appellants. The trial court entered a take-nothing judgment against appellants and denied their motion for new trial. Appellants now raise seven issues on appeal. We conclude that the trial court erred by admitting evidence of appellants' superseded pleadings, which show that, at one time, appellants had sued not only appellees but also two physicians involved in Maggie's delivery. Having reviewed the entire record, we further conclude that the error probably led to the rendition of an improper verdict. We therefore reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

## I. Attorney Misconduct

In their first issue, appellants contend that the trial court erred by failing to order a new trial because of the misconduct of appellees' counsel during trial. Appellants complain that counsel for appellees "engaged in misrepresentation and mischaracterization," produced a "constant barrage of improper objections meant to interrupt the flow of the examination [of witnesses] and to coach the witnesses," engaged in "sidebars meant to prejudice the jury," and made an "improper reference to attorney's fees." With the exception of counsel's reference to attorney's fees, which will be addressed below, appellants have provided this Court with no authority, other than the Texas Lawyer's Creed and the preamble to the state

bar rules, to establish that counsel's behavior amounted to attorney misconduct. *See* TEX.R.APP. P. 38.1(h). Appellants have also failed to provide this Court with any case law regarding attorney misconduct as a basis for new trial. *See id.* Although we agree with appellants that an attorney must "not knowingly misrepresent, mischaracterize, misquote, or miscite facts to gain an advantage," we must acknowledge that the trial court has broad discretion in deciding whether to grant a new trial. *Champion Int'l Corp. v. Twelfth Court of Appeals*, 762 S.W.2d 898, 899 (Tex.1988) (orig.proceeding) (per curiam). We are also fully aware of the trial court's discretion to grant a new trial "in the interest of justice," as well as the court's decision not to do so in this case. *See id.*

■ To successfully challenge the trial court's denial of a motion for new trial, appellants must demonstrate that the trial court acted unreasonably, arbitrarily, or without reference to guiding rules and principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985); *GJR Mgmt. Holdings, L.P. v. Raus*, 126 S.W.3d 257, 260 (Tex.App.-San Antonio 2003, pet. denied). In reviewing a trial court's order denying a motion for new trial, we make every reasonable presumption in favor of the trial court's ruling. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809–10 (Tex.1983); *Raus*, 126 S.W.3d at 260. Without appropriate citations to any controlling authorities regarding attorney misconduct as a basis for new trial, we cannot conclude that appellants have carried the burden of showing an abuse of discretion. *See* TEX.R.APP. P. 38.1(h). It would be injudicious and patently unfair for this Court to conclude, without the benefit of any relevant law, that the "trial court acted unreasonably, arbitrarily, or without reference to guiding rules and principles."

In overruling appellants' issue for failure to present authority to establish an abuse of discretion, we also find it significant that appellants' counsel failed to request a mistrial based on any of the alleged instances of attorney misconduct until after the jury's verdict was returned. For instance, at one point in the trial, appellants' counsel objected "to the continual sidebar remarks" from opposing counsel. The objection was sustained by the trial court, which instructed counsel "not to do that again" or "there will be fines assessed." *See* TEX.R. CIV. P. 269(f) (directing the trial court to rigidly suppress any sidebar remarks). Appellants contend that counsel's remarks tainted the entire trial, but counsel for appellants did not ask the trial court to declare a mistrial at the time of the objection or at any time before the jury's verdict was returned.

■ As mentioned above, appellants also complain that opposing counsel made an improper reference to attorney's fees during his cross-examination of appellants' expert on damages. As with the improper sidebar remarks, appellants' counsel lodged a timely objection, which was sustained by the trial court. The jury was instructed to disregard the reference to attorney's fees, and counsel for appellants seemed content with this remedial action. Counsel did not request a mistrial. On appeal, appellants complain that the remark probably caused the rendition of an improper judgment, but they have failed to show how the instruction to disregard counsel's reference to attorney's fees was inadequate to cure the harm created by the reference. Therefore, we cannot conclude that the trial court abused its discretion by denying appellants' motion for new trial on this basis.

Appellants' first issue is overruled.

## II. Exclusion of Expert Testimony

In their second issue, appellants contend that the trial court erred by excluding the testimony of Arthur Shaw, their proposed expert on the hospital's standard of care. There is a clear mandate in Texas that medical decisions are to be made by attending physicians. *Boney v. Mother Frances Hosp.*, 880 S.W.2d 140, 144 (Tex.App.-Tyler 1994, writ denied). A hospital cannot practice medicine and therefore cannot be held directly liable for any acts or omissions that constitute medical functions. *Spinks v. Brown*, 103 S.W.3d 452, 456 n. 4 (Tex.App.-San Antonio 2002, pet. denied). Nevertheless, a hospital may be directly liable for injuries arising from its negligent performance of a duty that it owes directly to a patient. *Denton Reg'l Med. Ctr. v. LaCroix*, 947 S.W.2d 941, 950 (Tex.App.-Fort Worth 1997, pet. denied). One such duty is the duty to use reasonable care in formulating the policies and procedures that govern the hospital's medical staff and non-physician personnel. *Reed v. Granbury Hosp. Corp.*, 117 S.W.3d 404, 409 (Tex.App.-Fort Worth 2003, no pet.). In this case, appellants argued that appellees breached this duty by failing to use reasonable care in formulating the policies and procedures regarding the availability of personnel to perform emergency neonatal resuscitation during the delivery of a baby.

The test used to determine the standard of care a hospital is required to use in formulating its policies and procedures is what a hospital of ordinary prudence would have done under the same or similar circumstances. *LaCroix*, 947 S.W.2d at 950 (citing *Hilzendager v. Methodist Hosp.*, 596 S.W.2d 284, 286 (Tex.Civ. App.-Houston [1st Dist.] 1980, no writ)). The standard of non-medical, administrative, ministerial or routine care at a hospital need not be established by expert testimony if the jury would be competent from its own experience to determine and apply such a reasonable-care standard. *Golden Villa Nursing Home, Inc. v. Smith*, 674 S.W.2d 343, 349 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.). Of course, if the alleged negligence is of such a nature as to be outside the experience of a layperson, expert testimony is necessary to establish the standard of care. *SunBridge Healthcare Corp. v. Penny*, 160 S.W.3d 230, 246–47 (citing *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex.1982)).

In this case, the parties agree that expert testimony was necessary to establish the standard of care in the formulation of policies and procedures regarding the availability of personnel to perform emergency neonatal resuscitation during the delivery of a baby. The parties disagree as to what type of expert would be qualified to testify to the standard of care. Appellees argued at trial that Shaw, the appellants' expert, was unqualified to offer expert testimony because he had no training, education, or experience as a physician or nurse. According to appellees, only a healthcare provider such a physician or nurse would be qualified to testify as to the standard of care for a hospital. Appellees further contended that, even if Shaw were qualified to give expert testimony, the questionable (i.e., purely subjective) methodology supporting his expert opinion would render his testimony inadmissible. Appellants argued that Shaw's knowledge, skill, experience, training, and education as a healthcare administrator qualified him to testify as to appellees' failure to use reasonable care in formulating policies and procedures. The trial court granted appellees' motion to strike, ruling that Shaw "lacks the qualifications to testify under Texas law."

The trial court has broad discretion to determine the admissibility of evi-

dence. *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex.2002). For an expert's opinion testimony to be admissible, the expert must be qualified, the expert's opinion must be relevant to the issues in the case, and the expert's opinion must be based upon a reliable foundation. *Id.* at 628–29 (citing Tex.R. Evid. 702; *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 720 (Tex.1998); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex.1995)). It is well settled in Texas that a trial court's ruling on the admissibility of evidence will not amount to reversible error unless the error probably led to the rendition of an improper judgment. Tex.R.App. P. 44.1(a); *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex.1992).

Appellants contend that the trial court's ruling probably led to the rendition of an improper judgment because it excluded their only expert as to the standard of care applicable to appellees. Notwithstanding appellees' representations to the contrary, it appears that Shaw was, in fact, the only witness who would have testified in this regard for appellants. Nevertheless, for the following reasons, we are unable to conclude that the trial court's error, if any, in determining that Shaw was not qualified as an expert probably led to the rendition of an improper judgment.

As explained above, an expert's opinion testimony is admissible only if the expert is qualified, the expert's opinion is relevant to the issues in the case, and the expert's opinion is based upon a reliable foundation. *Zwahr*, 88 S.W.3d at 628–29. In this case, the trial court ruled on only the first of these considerations. The trial court excluded Shaw's testimony after it concluded that Shaw was not qualified as an expert, but appellees had also argued at great length that Shaw's testimony was inadmissible because his opinions were not based

on a reliable foundation. As a reviewing court, we would be unable to conclude that the trial court's ruling on the first consideration amounted to reversible error without also concluding that the testimony would have been admissible given the second and third considerations enumerated above. That is, in order to determine whether the case turned on the particular evidence excluded, we must first determine whether the evidence should have been admitted. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex.1995). At trial, it was appellants' burden to establish that the testimony was admissible because the expert is qualified, the expert's opinion is relevant to the issues in the case, and the expert's opinion is based upon a reliable foundation. *Zwahr*, 88 S.W.3d at 628–29. On appeal, appellants have neglected to discuss whether Shaw's opinions were based upon a reliable foundation, an issue which was hotly contested before the trial court. The brief filed by appellees maintains that the trial court's ruling should be affirmed on this ground, an argument which is unacknowledged in either of appellants' briefs. Appellants have failed to make a key argument to support their issue on appeal, and this Court will not endeavor to make it for them. *See* Tex.R.App. P. 38.1(h). Accordingly, appellants' second issue is overruled.

### III. Improper Cross–Examination of Expert Witness

Appellants' third and fourth issues are closely related. In their third issue, appellants complain that the trial court abused its discretion by allowing counsel for appellees to cross-examine one of their expert witnesses, Dr. Cardwell, regarding his prior treatment of a patient. In their fourth issue, appellants complain that the trial court abused its discretion by admitting the same patient's medical records for the purpose of impeaching Dr. Cardwell.

Although counsel for appellees stated in open court, on the record, and before the jury, that he had in his possession the medical records of Dr. Cardwell's former patient, those records were never offered or admitted into evidence. Nevertheless, it is apparent from the record that counsel used the records to cross-examine Dr. Cardwell. Therefore, the real issue presented by appellants' third and fourth issues is whether the trial court abused its discretion by allowing counsel for appellees to impeach the credibility of Dr. Cardwell by questioning him about his treatment of a former patient. We address appellants' third and fourth issues together as a single issue.

As a preliminary matter, appellees contend that the error, if any, in this matter was waived by appellants' failure to ask the trial court (1) to strike the evidence from the record, (2) to instruct the jury to disregard the evidence, and (3) to declare a mistrial. We agree with this conclusion, but our reasoning differs from the argument made in appellees' brief.

■■■■ As this Court has explained previously, to preserve error regarding inadmissible testimony, a party is required to object to the complained-of evidence, move for an instruction to disregard, and then move for a mistrial. *Ortiz v. Ford Motor Credit Co.*, 859 S.W.2d 73, 77 (Tex. App.-Corpus Christi 1993, writ denied). This process must continue only until the party receives an adverse ruling from the court. *Id.* A party should object every time inadmissible evidence is offered. *Duperier v. Tex. State Bank*, 28 S.W.3d 740, 755 (Tex.App.-Corpus Christi 2000, pet. dism'd) (citing Tex.R.App. P. 33.1). If a party objects to certain evidence, but later does not object when the same evidence is introduced, the party waives its objection. *Id.* (citing *Richardson v. Green*, 677 S.W.2d 497, 501 (Tex.1984)); *see also*

*Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex.2004). A party can preserve error to repeated offers of the same evidence by asking the court for a running objection. *Ramirez*, 159 S.W.3d at 907; *Duperier*, 28 S.W.3d at 755 (citing *State v. Baker*, 574 S.W.2d 63, 65 (Tex. 1978)).

When applied to the facts of this case, as stated below, these precepts indicate that appellants failed to preserve their complaints for appellate review. During an initial bench conference held at the time of the witness's cross-examination, counsel for appellants made very specific objections to the questions regarding the witness's treatment of a former patient. These objections were overruled by the trial court. When the jury was brought back into the courtroom, appellees' counsel resumed the objectionable questioning of the witness. Counsel for appellants made no further objections to this questioning, even though no running objection had been requested or granted at that point. The witness eventually refused to answer any questions regarding his treatment of the patient, arguing that he could not do so without violating federal law because the patient had not executed a written release of confidentiality.

On its own accord, the trial court excused the jury and held a second bench conference. During this second conference, appellants requested a running objection "as to getting into anything with respect to another case and another patient other than a prior inconsistent statement." The trial court granted this running objection and stated that it was sustaining the objection. The court explained to both sides, "[W]e're not going to try a second lawsuit in this lawsuit." Then, it specifically stated that counsel for appellees would be allowed to question the witness as to prior inconsistent

statements by following the procedure outlined in rule 613(a). TEX.R. EVID. 613(a). Counsel for both sides stated on the record that they understood the court's ruling. Nevertheless, immediately after the jury was brought back into the courtroom, counsel for appellees resumed his objectionable cross-examination of the witness, questioning him about his prior treatment of the patient rather than a prior inconsistent statement. No further objections were made by appellants' counsel. Counsel did not request that the objectionable testimony be struck from the record or that the jury be given an instruction to disregard the testimony. No request for a mistrial was made.

■ Appellants now complain of the cross-examination testimony. For the following reasons, we conclude that counsel's actions at trial were insufficient to preserve error for appellate review. First, as to the questioning that took place after the first bench conference but before the second bench conference, no objections were made. The error, if any, was therefore waived. *See Ortiz*, 859 S.W.2d at 77. Second, as to the questioning that took place after the second bench conference, counsel failed to seek an adverse ruling by requesting the trial court (1) to strike the evidence from the record, (2) to instruct the jury to disregard the testimony, or (3) to declare a mistrial. Although the trial court had already sustained counsel's objections to this testimony during the second bench conference, it was nevertheless incumbent on counsel to pursue the matter until he received an adverse ruling from the trial court when the evidence was offered again in violation of the court's ruling. *See id.* Accordingly, the error, if any, regarding this testimony was waived. *See id.; One Call Sys. v. Houston Lighting & Power*, 936 S.W.2d 673, 677 (Tex. App.-Houston [14th Dist] 1996, writ de-

nied) (holding plaintiff waived its objection to inadmissible testimony by failing to request further relief after trial court sustained its objection). Finally, we are left with the cross-examination testimony that was given before either of the bench conferences were held. Appellants complain of the following exchange, which, when reviewed, shows that only the witness made objections:

**Counsel:** And this was a patient of yours up in Ohio, right?

**Witness:** Yes, but I don't see the relevance here. If you want—

**Counsel:** I'll see if I can get to it, okay?

**Witness:** Well, try to get to it because I see no relevance. And I think it's not only confusing me, I think its confusing the jury.

**Counsel:** Do you?

**Witness:** Yes.

**Counsel:** Well, let's—

**Witness:** Because we're not talking about that patient here.

**Counsel:** Wait a minute.

**Witness:** We're talking about Ms. McShane, totally different set of circumstances.

**Counsel:** We're talking about a patient who was under your care who was carrying a major risk factor which was exacerbated by the fact that in addition to that risk factor of diabetes she was noncompliant, didn't show up for her appointments, all of which increased dramatically the likelihood that she was going to give birth to a macrosomic baby. You're here criticizing these doctors for not predicting the possibility of shoulder dystocia, right? Aren't you?

**Witness:** My real criticism is not necessarily failure to predict the size of the baby. My criticism is that Dr. Eubank and the nurses should not have used a vacuum to deliver the baby.

Although appellants now take issue with this exchange, counsel made no timely objection to it. To be "timely," an objection must be made prior to the witness responding to the question if it is reasonably obvious that the question calls for inadmissible evidence. *Beall v. Ditmore,* 867 S.W.2d 791, 794 (Tex.App.-El Paso 1993, writ denied). Otherwise, counsel must object as soon as practicable after the inadmissible answer is given. *Id.* In this case, the record shows that the cross-examination continued and was uninterrupted by any objections for a significant period of time following the exchange documented above. We therefore have no choice but to conclude that counsel failed to "object as soon practicable after the inadmissible answer is given." *Id.* Accordingly, any complaint as to this testimony was waived.

For the foregoing reasons, appellants' third and fourth issues are overruled.

## IV. Superseded Pleadings

In their fifth issue, appellants argue that the trial court erroneously admitted testimony regarding superseded pleadings showing that Dr. Rothschild and Dr. Eubank were previously named in the lawsuit as having committed acts of negligence that proximately caused the damages, injuries, or harm claimed. As a preliminary matter, appellees contend that the complained-of evidence was merely cumulative of other un-objected-to evidence and the error, if any, is therefore harmless. *See Reina v. Gen. Accident Fire & Life Assurance Corp.,* 611 S.W.2d 415, 417 (Tex. 1981) (stating there is no reversible error if admissibility ruling involves cumulative evidence). Appellees argue that Dr. Cardwell testified that he wrote his expert report knowing that the doctors were not parties to the suit and that he nevertheless included numerous opinions concerning his criticisms of the physicians (for not predicting shoulder dystocia). The testimony relied upon by appellees is the following cross-examination of Dr. Cardwell by appellees' counsel:

**Counsel:** Can you answer my question?

**Witness:** Please state it.

**Counsel:** Yes, sir. You knew as you wrote that expert report that this was going to form the basis in part for the accusations against nurses and doctors in this lawsuit. You knew that right?

**Witness:** I knew that. And sir, let me explain. When I wrote this report on August 21st, I knew at the time that I wrote that report that the doctors were not a party to the lawsuit. But I tried to be fair and put all my opinions concerning the criticism of all of the healthcare providers. I am critical of the doctors for not predicting shoulder dystocia, but that's also a joint responsibility with the nurses.

**Counsel:** Are you through?

**Witness:** Yes.

In addition, appellees claim that the complained-of evidence was also cumulative of testimony given by Dr. Rothschild and Dr. Eubank. In relevant part, Dr. Rothschild testified as follows:

**Appellees' Counsel:** Now, Doctor, do you recall that [counsel for appellants] said he was not fussing at you? At one time

in this case he was fussing at you, was he not? Weren't you sued, originally?

**Appellants' Counsel:** May it please the Court, we would like to object for the record to going into this line of questioning. And we would like to, if we have permission rather than restating all of the objections, adopt specifically and incorporate by reference, all of the ones previously made with respect to this line of questioning?

**The Court:** All right. Your objection is overruled and your objection is continued. And all arguments are on the record, they are preserved on the record.

**Appellants' Counsel:** So it is continued and preserved—I'm sorry, Your Honor, I apologize. It's my fault, I can't hear.

**The Court:** Yes.

**Appellants' Counsel:** Thank you.

**Appellees' Counsel:** Tell the ladies and gentleman of the jury about the claims or the fussing at you that was going on in this case, please.

**Witness:** Well, yes. I was sued for $50 million in this case. And my involvement is what you heard it was. I was in my office and I was asked to render emergency aid and I ran to help and did the best I could. It didn't work out. I'm sorry for them. But if you are in a car and see a wreck and you stop to help, you do the best you can and get sued for $50 million.

**Appellees' Counsel:** Was there a claim made that you—your care was beneath the standard of care in this case?

**Witness:** Yes. $50 million worth.

**Appellees' Counsel:** By the McShanes?

**Witness:** Yes.

**Appellees' Counsel:** And they said, I think [counsel for appellants] said he wasn't fussing at Dr. Eubank. Was Dr. Eubank also at one time a party in this case?

**Witness:** Yes.

**Appellees' Counsel:** A claim made that his care was beneath the standard of care and caused the injuries in this case?

**Witness:** Yes.

As the foregoing excerpt from the reporter's record demonstrates, the trial court granted appellants' counsel a running objection to the line of questions regarding the doctors' prior status as defendants in the lawsuit. Subsequently, Dr. Eubank testified in response to a similar line of questions:

**Counsel:** Doctor, you were sued in this case, weren't you?

**Witness:** Yes, I was.

**Counsel:** Do you know why you are not sued now?

**Witness:** Not really.

**Counsel:** And do you know why the hospital is the only Defendant in this case and these nurses are accused of causing this injury?

**Witness:** I have no idea.

Having reviewed the testimony that appellees contend is cumulative of the complained-of evidence, we make the following observations: (1) Dr. Cardwell did not testify that any of the doctors had ever been sued; (2) appellants properly objected to Dr. Rothschild's testimony; and (3) appel-

lants properly objected to Dr. Eubank's testimony by the running objection granted by the trial court. *See Ramirez,* 159 S.W.3d at 907 (holding that recognition of running objection for more than one witness is appropriate if it clearly identifies the source and specific subject matter of the expected objectionable evidence).

 Based on these considerations, we conclude that appellees' cumulative-evidence argument is incorrect for at least two reasons: First, Dr. Cardwell never testified that the doctors had ever been sued. His testimony could not be cumulative of the complained-of evidence. Second, the testimony of Dr. Rothschild and Dr. Eubank *is* the complained-of evidence, and it was properly objected to. We will not hold that the error, if any, is harmless because the complained-of evidence was cumulative of itself. We therefore proceed to decide whether the trial court erred by admitting evidence that Dr. Rothschild and Dr. Eubank had been previously sued by appellants.

 The issue before us is whether the trial court erred by allowing testimony regarding statements made in superseded pleadings. It is well settled that a party who judicially admits a fact in a live pleading cannot later challenge that fact. *Houston First American Savings v. Musick,* 650 S.W.2d 764, 767 (Tex.1983). Thus, any fact that is judicially admitted is conclusively established in the case. *Id.* If a fact is judicially admitted, the pleadings need not be admitted nor other evidence presented to prove the judicial admission. *Id.*

 If a pleading is abandoned, superseded, or amended, it ceases to be a judicial pleading and statements in such a pleading cease to be judicial admissions. *Drake Ins. Co. v. King,* 606 S.W.2d 812, 817 (Tex.1980). Evidence of statements in such pleadings may be admissible but only as ordinary admissions. *See Kirk v. Head,* 137 Tex. 44, 152 S.W.2d 726, 729 (1941); *Loy v. Harter,* 128 S.W.3d 397, 407 (Tex. App.-Texarkana 2004, pet. denied); *Huff v. Harrell,* 941 S.W.2d 230, 239 (Tex.App.-Corpus Christi 1996, writ denied).

 Admissions are statements made or acts done by an opposing party, or on his behalf, which amount to a prior acknowledgment by such party that one of the facts relevant to the issues is not as he now claims. *Harrell,* 941 S.W.2d at 239. An admission against interest in an abandoned pleading may be used as evidence against the pleader, but it is not conclusive. *Id.* Like any other utterance or statement, if the abandoned pleading is inconsistent with the party's present position at trial, then the statement in the abandoned pleading is admissible and receivable into evidence as an admission, and this rule is recognized even though the superseded pleading is not verified and bears no file mark. *Id.* In order for a petition to qualify as an admission, it must contain some statement relevant to a material issue in the case and be inconsistent with the position taken by the party against whom it is introduced. *Id.*

A bench conference was held before Dr. Rothschild and Dr. Eubank gave their testimony. At that time, counsel for appellants argued that testimony regarding the plaintiffs' superseded pleadings could not be admitted because (1) they contained no prior inconsistent position or statement; (2) they were irrelevant to the case; and (3) their probative value, if any, was greatly outweighed by their unfairly prejudicial effect. Counsel for appellees argued, "That is an unbroken, allegedly, unbroken chain of negligence involving the physicians and the nurses for which all were sued; that was plaintiffs' claim from the outset. The fact they are now attempting

to run away from that is inconsistent with their originally stated position." The trial court ruled, "The prior pleadings will come in at the appropriate time." The doctors subsequently testified, and as documented above, counsel for appellants secured a running objection to the testimony arising from the entire line of questioning.

This Court has reviewed the five superseded pleadings filed by appellants, as well as appellants' live pleading, their sixth amended petition. We have identified no statement or position in the superseded pleadings that is inconsistent with appellants' live petition. All of appellants' pleadings are consistent with appellants' theory at trial, which was that appellees' negligence, either directly or indirectly (through the actions of its nursing staff), was a proximate cause of the injuries and damages suffered by appellants. At trial, appellees made much of the fact that appellants dropped their claims against the doctors, but all parties agree that the claims were dismissed without prejudice, meaning they theoretically could be reasserted in a new lawsuit. In short, none of the pleadings ever took the position, much less stated, that either Dr. Rothschild or Dr. Eubank was free of culpability. Likewise, none of the pleadings ever alleged that an "unbroken chain of negligence" involving the doctors, nurses, and appellees was the only cause of the injuries alleged.

To the contrary, the first three petitions filed by appellants alleged that the negligence of Dr. Rothschild and Dr. Eubank "taken separately or collectively, constitute a proximate cause of the injuries and damages claimed herein." These same petitions also alleged that "during the hospitalization in question, the defendant hospital was directly negligent in one or more particulars and such acts and/or omissions, taken separately or collectively, constitut-ed a proximate cause of the injuries and damages claimed herein." The petitions further alleged that "during the hospitalization in question the agents, servants, and/or employees of the defendant hospital involved in the care or treatment [with the exception of defendants Eubank and Rothschild] ... were negligent in one or more particulars and such acts and or omissions, taken separately or collectively, constitute a proximate cause of the injuries and damages claimed herein."

Appellants' third amended petition (the fourth petition filed) did not include any allegations of negligence against Dr. Rothschild or Dr. Eubank. Instead, appellants pursued claims solely against appellees. Even in the third amended petition, however, appellants alleged that the negligence of appellees was "a proximate cause" of the injuries and damages claimed. Appellants never alleged that the negligence of appellees was "the sole proximate cause" of the injuries and damages claimed.

Appellants subsequently filed a fourth, fifth, and sixth amended petition. Each of these petitions named only appellees as defendants. As with the third amended petition, these petitions each alleged that the negligence of appellees was "a proximate cause" and not "the sole proximate cause" of the injuries and damages claimed.

■ We have reviewed the record and find nothing inconsistent in appellants' superseded pleadings, live pleading, or position at trial. It is well settled in Texas that there may be more than one proximate cause for purposes of negligence. *See, e.g., First Assembly of God, Inc. v. State Utils. Elec. Co.,* 52 S.W.3d 482, 493 (Tex.App.-Dallas 2001, no pet.). Thus, the claim in appellants' live petition that the negligence of appellees was "a proximate cause" of their injuries and damages does

not mean that appellees' negligence was "the sole proximate cause" of the injuries and damages. *See id.* (contrasting the concepts of "a proximate cause" with "a sole proximate cause"). It also does not follow that the negligence of Dr. Rothschild or Dr. Eubank was not "a proximate cause" of the injuries. The live petition simply indicates that Dr. Rothschild and Dr. Eubank were not ultimately sued. Thus, the only difference between appellants' superseded and live pleadings is that Dr. Rothschild and Dr. Eubank were once included in the lawsuit and then dropped.

The issue before us is whether this difference alone is a sufficient basis to conclude that the statements in the superseded pleadings amounted to admissions. The parties each rely on the same case to prove the correctness of their respective positions: *Texaco, Inc. v. Pursley,* 527 S.W.2d 236, 240 (Tex.Civ.App.-Eastland 1975, writ ref'd n.r.e.). In *Pursley,* a defendant offered into evidence the plaintiff's original petition, in which the plaintiff had alleged actions for negligence against four different defendants. *Id.* The plaintiff ultimately went to trial on his first amended original petition, which alleged actions for negligence against only two defendants. *Id.* The trial court refused to admit the superseded pleading. *Id.* On appeal, the reviewing court noted that "it is well settled that the doctrine invoked applies only as between inconsistent remedies or demands; and to make them inconsistent one action must allege what the other denies, or the allegations in one action must necessarily repudiate or be repugnant to the other." *Id.* (citing *Alexander v. Harris,* 254 S.W. 146, 149 (Tex.Civ.App.-Fort Worth 1923, writ ref'd)). The reviewing court then upheld the trial court's ruling, holding that the original petition was not inconsistent with the trial pleadings simply because two defendants were dropped. *Id.*

Appellees argue that the court's holding in *Pursley* supports their position because the two defendants who were dropped in that case actually settled with the plaintiffs, whereas the doctors in this case did not. *See id.* We are unpersuaded by this argument. The *Pursley* court did not attach any significance to the fact that the dropped defendants had settled with the plaintiff. This observation was made in passing, after the court had concluded that the pleadings were not inconsistent. *See id.* The fact that the defendants had been dropped because they settled was not, as appellees suggest, a consideration used to determine whether there was an inconsistency that would make the superseded pleading relevant. *See id.* This is evident from the fact that the court first concluded there was no inconsistency in the pleadings and then mentioned that the dropped defendants had settled with the plaintiff. *See id.*

Appellants' pleadings did not request inconsistent remedies or make inconsistent demands. *See id.* None alleged what the others denied. *See id.* We therefore conclude that the statements in the superseded pleadings were not admissions and were therefore inadmissible. *See Harrell,* 941 S.W.2d at 239. The trial court abused its discretion by allowing witnesses to testify regarding statements made in the superseded pleadings.

 We must now determine whether the trial court's error amounts to reversible error. To do this, we must determine whether the error was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case. *See* TEX.R.APP. P. 44.1(a); *First Employees Ins. Co. v. Skinner,* 646 S.W.2d 170, 172 (Tex.1983); *Nix v. H.R. Mgmt. Co.,* 733 S.W.2d 573, 576 (Tex.App.-San Antonio 1987, writ ref'd n.r.e.). The

supreme court has found it impossible to prescribe a specific test for this determination, and it has therefore become a judgment call entrusted to the sound discretion and good sense of the reviewing court from an evaluation of the whole case. *Nix*, 733 S.W.2d at 576 (citing *Lorusso v. Members Mutual Ins. Co.*, 603 S.W.2d 818, 821 (Tex.1980)); *see also Ponder v. Texarkana Memorial Hosp., Inc.*, 840 S.W.2d 476, 479 (Tex.App.-Houston [14th Dist.] 1991, writ denied). Some courts have held that when evidence is sharply conflicting and the case is hotly contested, any error of law by the trial court will be reversible error. *Stergiou v. Gen. Metal Fabricating Corp.*, 123 S.W.3d 1, 6 (Tex.App.-Houston [1st Dist.] 2003, pet. denied); *Hill v. Heritage Resources*, 964 S.W.2d 89, 136 (Tex.App.-El Paso 1997, no pet.); *Nix*, 733 S.W.2d at 576.

Having reviewed the entire record, we conclude that the evidence was "sharply conflicting" and that the case was indeed "hotly contested." As discussed above, the exclusion of Shaw's testimony rendered appellants' theory of direct corporate liability unworkable, as Shaw was appellants' only expert witness to testify to appellees' standard of care. Nevertheless, appellants had two theories of liability against appellees. The other theory was based on vicarious liability for the negligence of appellees' agents, servants, and employees (other than the doctors). Both sides produced "sharply conflicting" evidence on this theory. Thus, although one of appellants' theories of recovery failed because of the trial court's ruling on Shaw's testimony, the case was still "hotly contested" because appellants' second theory remained viable. Of course, as the reviewer of a cold record, this Court is no

way positioned to evaluate or declare the precise effect that the inadmissible evidence had on the jury's deliberations. *See Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex.2004) ("[W]hether erroneous admission is harmful is more a matter of judgment than precise measurement."). At best, we can note that the case was hard fought by both sides. It is difficult, if not impossible, for this Court to determine whether the jury's verdict hinged on the inadmissible evidence.

Nevertheless, we can discern a distinct pattern in counsel's use of the inadmissible evidence to relieve appellees of liability simply because the doctors had been dropped from the suit. The pattern began during the jury selection process, when counsel for appellees stated before the panel of prospective jurors, "[A]t least three of these doctors [are] ... probably going to testify in this case and they have been sued at one time by the Plaintiffs."[1] Then, at trial, counsel tried to establish that, if anyone was responsible for the injuries, it was the doctors. Counsel asked Dr. Cardwell how it was that the nurses could be negligent when the doctors had failed to predict the birth complications giving rise to the baby's injuries. Counsel then emphasized repeatedly that the doctors had actually been sued at one point but were no longer being sued. Dr. Rothschild testified that he had been sued for $50 million. Dr. Eubank testified that he too had been sued and that, for some unknown reason, he had been dropped from the suit. Counsel asked Dr. Eubank why appellees were the only ones being sued, but Dr. Eubank did not know why. During closing argument, counsel brought this up again, asking the jury: "Why is it that the doctor isn't here and this big

---

1. Counsel for appellants objected to this statement, requested the court to instruct the jury panel to disregard the statement, and asked for a mistrial, but his requests were overruled.

hospital is? There is a pretty good common sense answer to that, and I'll leave it up to you to answer the question for yourselves."

From the foregoing facts, it is apparent that counsel asked the jury to relieve appellees of liability simply because appellants had previously sued the doctors, who were allegedly much more culpable than appellees, and then dropped their claims for no apparent reason, allowing for the inference that even the claims against the doctors had been frivolous. If the claims against the doctors were frivolous, then surely the claims against the hospital (i.e., appellees) were also frivolous. Although we see nothing preventing counsel from defending appellees by proving that the actions of one or both of the doctors was "the sole proximate cause" of the injuries, we think it is highly improper to do so by relying on superseded pleadings which show that the doctors had been sued at one point and then dropped from the lawsuit. In this case, such evidence was unfairly prejudicial because it allowed the jury to infer that the claims against appellees were frivolous solely because substantial claims against the doctors had been filed and then dropped without explanation.

We recognize that this was a hard-fought case. With all due candor, we also recognize that we have no way of knowing why the jury reached the verdict it reached. Nevertheless, we think it would be disingenuous to brush aside as harmless an error that pervaded all stages of trial, from jury selection, expert witness testimony, to closing argument. As demonstrated above, the error was reasonably calculated to cause the rendition of an improper judgment. Because this case was so close, we conclude that the error probably led to the rendition of an improper judgment. Accordingly, appellants' fifth issue is sustained.

## V. Conclusion

Having sustained appellants' fifth issue, we reverse the judgment of the trial court and remand for a new trial. We do not reach appellants' sixth or seventh issues. See Tex.R.App. P. 47.1.

Dissenting Opinion by Justice CASTILLO.

Appellants assert that the trial court reversibly erred by allowing testimony of superseded pleadings to inform the jury that the testifying doctors were once defendants in the case. The majority concludes that the evidence was not an admission, was inadmissible, and that the trial court's error was reasonably calculated to and probably led to the rendition of an improper judgment. Respectfully, I disagree that appellants have shown reversible error.

We ordinarily do not find reversible error for erroneous rulings on admissibility of evidence where the evidence in question is (1) cumulative, and (2) not controlling on a material issue dispositive of the case. See Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex.1989) (citing Whitener v. Traders and Gen. Ins. Co., 155 Tex. 461, 289 S.W.2d 233, 236 (Tex.1956)). Even assuming that the trial court abused its discretion in allowing the testimony and further assuming that appellants preserved error, respectfully, I would hold that: (1) the complained-of evidence was cumulative of evidence that the testifying physicians were not parties to the lawsuit, see Gee, 765 S.W.2d at 396; and (2) appellants, with the burden to show prejudicial error, have not shown the error "turns on" the particular evidence admitted, see Tex. Dep't of Transp. v. Able, 35 S.W.3d 608, 617 (Tex.2000); City of Brownsville v. Al-

*varado,* 897 S.W.2d 750, 753–54 (Tex.1995); *Whitener,* 289 S.W.2d at 236.

Accordingly, I respectfully dissent.[1]

---

1. I need not address the majority's decision on the first through fourth issues presented because the fifth issue is dispositive. *See* TEX. R.APP. P. 47.1. Similarly, I need not address appellants' sixth and seventh issues presented regarding juror misconduct, because the majority does not reach them. *Id.*